**UNITED STATES of America, Appellee,**

v.

**Michael SPENCER, Defendant–Appellant.**

**No. 243, Docket 91–1185.**

United States Court of Appeals, Second Circuit.

Argued Oct. 10, 1991.

Decided Jan. 28, 1992.

Andrew J. Maloney, III, Asst. U.S. Atty., New York City (Otto G. Obermaier, U.S. Atty., S.D.N.Y., Nelson W. Cunningham, Asst. U.S. Atty., of counsel), for appellee.

Arthur J. Viviani, New York City, for defendant-appellant.

Before MINER and MAHONEY, Circuit Judges, and DEARIE, District Judge.[1]

MINER, Circuit Judge:

Defendant-appellant Michael Spencer appeals from a judgment of conviction entered in the United States District Court for the Southern District of New York (DiCarlo, *J.*) after a jury found him guilty of conspiracy to commit armed robbery of an Insured Postal Credit Union, in violation of 18 U.S.C. § 371, and armed robbery of an Insured Postal Credit Union, in violation of 18 U.S.C. § 2 and § 2113(a) and (d). The district court (McKenna, *J.*) (to whom Spencer's case was originally assigned) previously had granted defendant's motion to suppress statements he made to FBI agents, finding that defendant made an ambiguous request for counsel at the time of his questioning by the agents. The district court held that the government had failed to meet its burden of proving that defendant initiated interrogation following the request. Defendant's motion to suppress testimony of the car service driver who drove defendant to the robbery was denied, despite defendant's argument that the testimony was "fruit of the poisonous

1. Hon. Raymond J. Dearie, United States District Judge for the Eastern District of New York, sitting by designation.

tree" derived from defendant's previously suppressed statements. Relying on Supreme Court decisions in *Michigan v. Tucker*, 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974) and *Michigan v. Harvey*, 494 U.S. 344, 110 S.Ct. 1176, 108 L.Ed.2d 293 (1990), the judge reasoned that the violations that occurred during defendant's questioning were not of constitutional magnitude (since the continued questioning did not involve any coercion), but rather violated only procedural safeguards. Accordingly, the third-party witness' testimony was held admissible even though the witness' identity was derived from defendant's statements.

At sentencing, the district court accepted the recommendation made in the presentence report and classified defendant as a "Career Offender" pursuant to section 4B1.1 of the United States Sentencing Guidelines (the "Guidelines"), based upon defendant's prior convictions for attempted robbery in the third degree and robbery in the second degree. On appeal, defendant argues that the failure to suppress the derivative third-party witness' testimony violated his constitutional rights under the Fifth and Sixth Amendments. He also challenges the district court's classification of him as a "Career Offender" under the Guidelines.

For the reasons stated below, we vacate the conviction and remand the case to the district court to determine, as required by *Harvey*, whether defendant's waiver, if any, of his right to counsel was knowing and voluntary. The district court should also consider the government's alternative theories for admitting the testimony, namely the "attenuation" and "inevitable discovery" doctrines, if it finds defendant did not knowingly and voluntarily waive. We affirm the district court's decision to classify defendant as a "Career Offender" under the Guidelines.

## BACKGROUND

On December 20, 1989, defendant Spencer and Joseph Cauldwell committed an armed robbery of a federal credit union in Manhattan. The defendant apparently had become familiar with the layout of the credit union because his mother worked there and he had visited her on several occasions.

On the morning of the robbery, Spencer and Cauldwell met at Tinton Avenue in the Bronx, at which time Spencer telephoned the Amigo Car Service for a taxicab. When the taxicab arrived, the two men directed the driver to drive them to the location of the credit union. Upon arriving at the credit union in the car, Spencer and Cauldwell realized that neither had money to pay the driver, prompting Spencer to leave Cauldwell in the car while he went into the credit union to borrow money from his mother. Shortly thereafter, Spencer returned to the taxicab and, at Cauldwell's urging, accompanied Cauldwell into the credit union to show him the layout. The driver waited in the car for the two men to return.

After Cauldwell rang the bell to the "employee only" entrance, an employee of the credit union opened the door through which Cauldwell entered. Spencer waited outside, apparently fearing that one of his mother's co-workers would recognize him. Cauldwell brandished a starter's pistol he had brought along and ordered two employees, one of whom was Mrs. Spencer, to open the safe. Cauldwell took cash and checks from the safe in an amount in excess of $31,000, stuffed the stolen funds into a black duffle bag he was carrying, and fled the credit union. Cauldwell and Spencer returned to the Bronx in the same taxicab.

Cauldwell was arrested on May 15, 1990. The FBI identified Cauldwell as a suspect in the robbery after finding a traffic ticket with his name on it, apparently dropped at the credit union at the time of the robbery. Cauldwell cooperated with the government, leading to Spencer's arrest on June 20, 1990.

During the automobile ride to FBI headquarters, agents informed Spencer that he had been indicted, and gave *Miranda* warnings. Spencer was given *Miranda* warnings again upon arrival at FBI headquarters, at which time he also was asked

to sign a form waiving his rights. Spencer refused to sign the waiver form and apparently made some reference to his right to speak with an attorney.[2] The FBI agent asked Spencer whether he would agree to answer some questions, and Spencer replied that he did not have anything to hide and would answer the questions if he could. Spencer then made statements admitting that his mother was employed at the credit union and that he took the subway or a car service to visit her there on occasion. When asked which car service he took to visit his mother, Spencer stated that he sometimes used the Amigo Car Service ("Amigo"). He then denied any involvement in the credit union robbery. The FBI identified and located Jose Garcia, the Amigo driver who transported Spencer and Cauldwell to and from the credit union, through Spencer's statements and Amigo's records.

The district court granted Spencer's motion to suppress his own post-arrest statements, ruling, pursuant to *United States v. Gotay*, 844 F.2d 971, 976 (2d Cir.1988), that defendant made an ambiguous request for counsel during questioning. This conclusion was based on defendant's testimony regarding the interrogation, the FBI agents' failure to remember whether defendant requested an attorney, and defendant's refusal to sign the waiver form. The district court reasoned that there was no "evidence in the record that would show clearly and in a manner consistent with the government's burden that, after refusing to sign the waiver, defendant initiated questioning of himself by the agents." From this the court determined "that the government has not sustained its burden of showing a knowing and voluntary waiver

of the right to counsel at the interrogation...."

Notwithstanding this conclusion, the district court later denied Spencer's motion to suppress evidence derived from the post-arrest statements, particularly Garcia's testimony that he drove Spencer to the credit union on the day in question. Relying on Supreme Court decisions in *Michigan v. Tucker*, 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974), *Oregon v. Elstad*, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), and *Michigan v. Harvey*, 494 U.S. 344, 110 S.Ct. 1176, 108 L.Ed.2d 293 (1990), the district court in a memorandum opinion ruled that the violations that occurred during Spencer's questioning were not of constitutional magnitude, but rather violated only *Miranda*'s procedural safeguards:

> [t]he *Tucker* Court distinguished [ ] between 'compulsion sufficient to breach the right against compulsory self-incrimination' (which it found did not exist) and 'a disregard, albeit an inadvertent disregard, of the procedural rules later established in *Miranda*' (which it found had taken place), and went on to hold that the testimony of the witness was properly admitted at trial, no Constitutional right of the defendant in the form of the compulsion of testimony, but rather a *Miranda* procedural safeguard, having been violated.

The district court refused to suppress Garcia's testimony because it found that "[a]s in *Tucker*, there is no evidence in the record that the [agents] coerced or compelled defendant's identification of Amigo or any other statement, or acted otherwise than in good faith, and exclusion of Garcia's testimony would not serve the deterrent purposes of *Miranda*." The district

---

**2.** Defendant testified as follows at the initial suppression hearing:

Q (defense counsel). And what happened?
A (defendant). I read [the waiver] ... [a]nd I told him the statement says that I can't have an attorney and I didn't want to sign it because the signature part is right under that. So I refused to sign it.

\*     \*     \*     \*     \*     \*

Q (government on cross). Did you tell the agents at that time that you wanted a lawyer, or did you not say that?

A (defendant). I told them it was my right to have an attorney.

\*     \*     \*     \*     \*     \*

Q. Did you ask for one, did you ask the agents for an attorney at that time?
A. I don't know.

court noted in a footnote to its opinion that *Harvey* extended the *Tucker* prophylactic analysis to the Sixth Amendment context. Defendant appeals, arguing that admission of Garcia's testimony—which was derivative from his own suppressed statements, and therefore allegedly "fruit of the poisonous tree"—constituted a violation of defendant's Fifth Amendment right against self-incrimination and his Sixth Amendment right to counsel.

## DISCUSSION

### *Suppression of witness' testimony*

■ In *Tucker*, the Supreme Court held admissible the testimony of a witness discovered as a result of a defendant's own voluntary statements, even though the police learned the identity of the witness by questioning defendant prior to informing him of his right to a court appointed attorney. *Tucker*, 417 U.S. at 450–51, 94 S.Ct. at 2367. The *Tucker* Court drew a distinction between a violation of a defendant's constitutional rights and a mere violation of *Miranda*'s prophylactic safeguards, stating that "[t]he [*Miranda*] Court recognized that these procedural safeguards were not themselves rights protected by the Constitution but were instead measures to insure that the right against compulsory self-incrimination was protected." *Id.* at 444, 94 S.Ct. at 2364. It reasoned that the "police conduct at issue here did not abridge respondent's constitutional privilege against compulsory self-incrimination, but departed only from the prophylactic standards later laid down by this Court in *Miranda* to safeguard that privilege." *Id.* at 446, 94 S.Ct. at 2364. *See also Elstad*, 470 U.S. at 307, 105 S.Ct. at 1292 ("[T]he *Miranda* presumption [of compulsion], though irrebuttable for purposes of the prosecution's case in chief, does not require that the statements and their fruits be discarded as inherently tainted."); *United States v. Morales*, 788 F.2d 883, 886 (2d Cir.1986) ("[a] technical *Miranda* violation is not in and of itself a violation of the Fifth Amendment ... [t]he prophylactic *Miranda* warnings are not in themselves rights protected by the Constitution but are instead measures designed to protect the right against compulsory self-incrimination") (citations omitted).

*Tucker* involved a Fifth Amendment claim, not a Sixth Amendment claim (as is asserted here). The *Tucker* Court did indicate, however, that "recourse to respondent's voluntary statements does no violence to such elements of the adversary system as may be embodied in the Fifth, *Sixth*, and Fourteenth Amendments." *Tucker*, 417 U.S. at 450, 94 S.Ct. at 2367 (emphasis added). Thus, *Tucker* appears to extend its reach to police transgressions against the prophylactic standards guarding the right to counsel.

In *Harvey*, the Court held that the prophylactic analysis was also applicable to post-arrest requests for counsel under the Sixth Amendment. *Harvey*, 110 S.Ct. at 1181–82. As noted in *Harvey*, the Sixth Amendment prophylactic rule, as annunciated in *Michigan v. Jackson*, 475 U.S. 625, 636, 106 S.Ct. 1404, 1411, 89 L.Ed.2d 631 (1986), holds that "once a criminal defendant invokes his Sixth Amendment right to counsel, a subsequent waiver of that right—even if voluntary, knowing, and intelligent under traditional standards—is presumed invalid if secured pursuant to *police initiated* conversation." *Harvey*, 110 S.Ct. at 1177 (emphasis added). Statements obtained during police initiated interrogation after invocation of the right to counsel may not be admitted against a defendant in the prosecution's case-in-chief. *Jackson*, 475 U.S. at 636, 106 S.Ct. at 1411. *Harvey* limited *Jackson*, by holding that a statement obtained during police initiated questioning after a request for counsel, while violative of Sixth Amendment prophylactic standards, may be admissible to impeach a defendant on cross-examination if given after a knowing and voluntary waiver of his right to counsel. *Harvey*, 110 S.Ct. at 1182. Again, the Court distinguished between prophylactic standards and constitutional violations.

■ Once an accused invokes his right to counsel, "courts may admit his responses to further questioning only on finding that he (a) initiated further discussions with the

police, and (b) knowingly and intelligently waived the right he had invoked." *Smith v. Illinois,* 469 U.S. 91, 95, 105 S.Ct. 490, 493, 83 L.Ed.2d 488 (1984); *see also Edwards v. Arizona,* 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378 (1981). These two inquiries are distinct, and for purposes of *Harvey* analysis must be treated as such. Clearly, a knowing and voluntary waiver made after police initiated questioning following a request for counsel does not permit the use of defendant's own statements as part of the case in chief against him. *See Jackson,* 475 U.S. at 636, 106 S.Ct. at 1411. Under *Harvey,* however, such a waiver would permit the use of defendant's statements to impeach him at trial. *See Harvey,* 110 S.Ct. at 1181–82.

The district court in the instant case did not adequately determine whether the waiver, if any, following government initiated interrogation was "knowing and voluntary." In its memorandum decision allowing admission of Garcia's testimony, the district court found "no evidence" in the record that the agents who questioned Spencer "coerced or compelled" his identification of the Amigo Car Service, or acted in bad faith. The district court also appeared to credit defendant's testimony that he understood his rights after being given *Miranda* warnings. However, in the earlier suppression hearing (suppressing defendant's own statement), the district court, relying on *Jackson,* concluded that there was not a "knowing and voluntary" waiver because the government failed to meet its burden of showing that defendant initiated the questioning after requesting counsel. This reasoning conflates the knowing and voluntary inquiry with the question of who initiated the questioning and makes the record unclear regarding the waiver issue for purposes of *Harvey* analysis. Thus, the district court did not consider the two inquiries separately as required by *Harvey.*

■ Where a defendant's waiver is obtained during police initiated questioning after a request (ambiguous or not) for counsel, but the waiver is otherwise knowing and voluntary, *Harvey* and *Tucker*— when taken together—authorize use of the

defendant's statements to locate third-party witnesses such as Garcia and admission of the testimony of such third-party witnesses at trial. Because the district court blended the two inquiries, we must remand for a determination of whether defendant's waiver, if any, obtained during the government initiated questioning, was knowing and voluntary. If it was, Garcia's testimony properly was admitted even though it resulted from statements suppressed due to a violation of Sixth Amendment prophylactic standards. The mere finding of a lack of coercion, however, is not sufficient under *Harvey* to permit admission of the testimony. *Harvey,* 110 S.Ct. at 1178, 1182 (remanding to state court for evidentiary hearing to determine whether defendant gave knowing and voluntary waiver of right to counsel under "traditional standards").

We note also that defendant's refusal to sign a waiver form is not dispositive of the issue. *See United States v. Scarpa,* 897 F.2d 63, 68 (2d Cir.) ("While merely answering questions after *Miranda* warnings have been given does not necessarily constitute a waiver, no express statement of waiver is required."), *cert. denied,* —— U.S. ——, 111 S.Ct. 57, 112 L.Ed.2d 32 (1990); *United States v. Boston,* 508 F.2d 1171, 1175 (2d Cir.1974) (Fifth Amendment waiver was knowing and voluntary; failure to execute written waiver not dispositive but may indicate no waiver intended), *cert. denied,* 421 U.S. 1001, 95 S.Ct. 2401, 44 L.Ed.2d 669 (1975).

■ Following the teaching of the Supreme Court in *Harvey,* we remand to the district court for a clarification as to whether Spencer's waiver, invalid due to the fact that the FBI initiated interrogation, was nonetheless knowing and voluntary. We recognize that the Supreme Court, in remanding in *Harvey* for a determination of whether there had been a knowing and voluntary waiver after police initiated questioning that followed invocation of the right, went on to say: "we need not consider the admissibility for impeachment purposes of a voluntary statement obtained in the absence of a knowing and

voluntary waiver of the right to counsel." *Harvey*, 110 S.Ct. at 1182. Although the Court left the issue open, our choice is to require a knowing and voluntary waiver of the right to counsel, even where the statement given is shown to be voluntary. We conclude that, in the absence of a later waiver of the initially invoked right to counsel, any subsequent statement transgresses the core constitutional right to counsel, rather than a judicially created prophylactic rule for the protection of that right, and therefore should not be available to the prosecution for any purpose.

On remand, in the event the district court finds that defendant did not knowingly and voluntarily waive his right to counsel under traditional standards, it should also address the government's other claimed exceptions to the exclusionary rule, namely the doctrines of attenuation, *see United States v. Ceccolini*, 435 U.S. 268, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978), and inevitable discovery, *see Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). These arguments were not ruled on by the district court and the present record is not adequately developed to allow us to properly consider these alternative theories for admission of the testimony.

### Sentencing Guidelines claim

We find defendant's Sentencing Guidelines claim to be without merit. Spencer challenges the district court's classification of him as a "Career Offender" pursuant to section 4B1.1 of the Guidelines. He argues that his 1987 conviction for attempted robbery in the third degree cannot constitute a conviction for a "crime of violence," because the New York statutory definition of robbery includes the "threaten[ed]" immediate use of physical force. This argument misreads the guidelines.

The term "crime of violence," as used in section 4B1.1, is defined in section 4B1.2 to include any federal or state offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2. In application note 2 to section 4B1.2, a "crime of violence" is said to include the offense of "attempting to commit such offense[ ]." U.S.S.G. § 4B1.2, comment. (n. 2). Under applicable New York law, robbery is defined generally as "forcibly steal[ing] property and ... us[ing] or threaten[ing] the immediate use of physical force upon another person," N.Y.Penal Law § 160.00 (McKinney 1988), and specifically, robbery in the third degree is defined as "forcibly steal[ing] property." N.Y.Penal Law § 160.05 (McKinney 1988). It is therefore clear that defendant's prior third degree robbery conviction fits comfortably within section 4B1.2, and constitutes a "crime of violence" for purposes of the "Career Offender" provision of the Guidelines.

We have considered appellant's other arguments and find them to be without merit.

### CONCLUSION

We vacate the conviction and remand for the district court to determine the nature and circumstances of defendant's waiver in accordance with *Harvey*, to consider the government's alternate theories of attenuation and inevitable discovery, and to report its findings and conclusions to us. This panel will retain jurisdiction over further proceedings in this case.