*514 DUHÉ, Circuit Judge:

Proceedings Below and Appellate Jurisdiction

Meyerland Co. and William M. Adkinson sued Continental Savings Association (“Continental”) for, among other things, usury and fraud in state court. Continental counterclaimed for fraud and breach of contract. The trial court awarded Continental $30,031,089.99 and Adkinson $1,124,-109.59 in damages. Meyerland and Adkin-son appealed.
After the appeal was filed, the Federal Home Loan Bank Board declared Continental insolvent and appointed the Federal Savings and Loan Insurance Corporation (FSLIC) as receiver. The FSLIC removed to federal district court which remanded on April 21, 1989.
On August 9, 1989, the Financial Institutions Reform, Recovery and Enforcement Act (FIRREA), Pub.L. 101-73, 103 Stat. 183, 383, was enacted. The Federal Deposit Insurance Corporation (FDIC) succeeded the FSLIC as the receiver of Continental and the FDIC then removed this case on September 7, 1989 under § 209[4] of FIRREA (12 U.S.C. § 1819(b)(2)(B)).[2] The district court again remanded and awarded the appellees $2,500 in sanctions.
The FDIC appeals. Although remand orders are generally not appealable, 12 U.S.C. § 1819(b)(2)(C) authorizes an appeal in this case. This appeal presents two issues: (1) whether 12 U.S.C. § 1819(b)(2) authorizes the FDIC to remove a state court appellate proceeding, and (2) whether the district court erred in awarding sanctions.
I. Removal Power Under FIRREA
Congress enacted FIRREA, a broad revision in federal banking law, in response to the recent and ongoing savings and loan crisis. See Meliezer v. Resolution Trust Corp., 952 F.2d 879, 881 (5th Cir.1992); Smallwood v. Office of Thrift Supervision, 925 F.2d 894, 898 (6th Cir.1991). One of the ways FIRREA addresses the problems facing this nation’s thrift institutions is through “provisions which expand, enhance and clarify enforcement powers of the financial institution regulatory agencies.” H.R.Rep. No. 101-54(1), 101st Cong., 1st Sess. 291, 311, reprinted in 1989 U.S.Code Cong. & Admin.News 86, 107. Specifically, FIRREA greatly expands the FDIC’s role in regulating and supervising such institutions. Id. at 310-11, reprinted in 1989 U.S.Code Cong. & Admin.News at 106-07. See also Note, The FDIC’s Enhanced Powers Over Savings Associations: Does FIRREA Make It “SAIF”?, 59 Ford.L.Rev. S381, S382 (1991).
This case requires us to examine the extent of the FDIC’s powers under FIR-REA. At issue are jurisdictional and removal provisions giving the FDIC broad power to gain access to federal courts in actions to which it is a party pursuant to FIRREA. The provisions relating to removal, found in 12 U.S.C. § 1819(b)(2), read as follows:
(A) In general
Except as provided in subparagraph (D), all suits of a civil nature at common law or in equity to which the Corporation, in any capacity, is a party shall be deemed to arise under the laws of the United States.
(B) Removal
Except as provided in subparagraph (D), the Corporation may, without bond or security, remove any such action, suit, or proceeding from a state court to the *515 appropriate United States district court, (emphasis supplied).[3]
The power conferred by FIRREA to invoke federal jurisdiction and to remove from state court is substantial. See Carrollton-Farmers Branch Independent School District v. Johnson & Cravens, 889 F.2d 571, 572 (5th Cir.1989); Triland & Holdings & Co. v. Sunbelt Service Corp., 884 F.2d 205, 207 (5th Cir.1989). See also Jameson v. FDIC, 931 F.2d 290, 291 (5th Cir.1991) (FIRREA extends FDIC’s jurisdiction to include persons no longer affiliated with insured institutions); FDIC v. Griffin, 935 F.2d 691, 696 (5th Cir.1991) (allowing federal jurisdiction even when FDIC has been voluntarily dismissed as a party), cert. denied, — U.S. -, 112 S.Ct. 1163, 117 L.Ed.2d 410 (1992). Access to federal courts in all actions to which it is a party allows the FDIC to develop and rely on a national and uniform body of law, consistent with eliminating the problems identified by Congress in having less rigorous state standards coexisting with federal ones.[4] See Smallwood v. Office of Thrift Supervision, 925 F.2d at 898 (“We read many portions of the FIRREA as establishing the primacy of the Federal interest as regards the solvency and viability of the Federal deposit insurance system.”).
In the case before us, first FSLIC and then the FDIC sought removal from state to federal court, FSLIC under 12 U.S.C. § 1730(k)(l) (repealed by FIRREA) and the FDIC under 12 U.S.C. § 1819(b)(2)(B), after a state court judgment had been entered, without seeking relief from judgment under Fed.R.Civ.P. 60, and while the case was on appeal to the appropriate state appellate court. In each case, the federal district court remanded to state court, concluding that neither FIRREA nor 28 U.S.C. §§ 1441-51, the general removal statutes, authorized removal at this stage of the proceedings.
Although it is not clear whether the general removal statutes permit appellate removal,[5] the dissenters rely upon the rule that federal district courts lack jurisdiction to review final state court judgments to support their position that § 1819 does not permit it. Specifically, they rely on Dis *516 trict of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476,103 S.Ct. 1303, 1311, 75 L.Ed.2d 206 (1983), and Hooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923). Their reliance is misplaced. Under the Rooker-Feldman line of cases, federal statute defines “final state court judgments” as those “rendered by the highest court of a state in which a decision could be had.” 28 U.S.C. § 1257(a). The judgment of the Texas state district court is not a “final” judgment within this definition. Two higher courts within the state judiciary could hear appeals. See Market St. Ry. Co. v. Railroad Commission of State of California, 324 U.S. 548, 551, 65 S.Ct. 770, 772, 89 L.Ed. 1171 (1945) (a state judgment is final (1) if it is an effective determination of litigation in that it is not an interlocutory or intermediate judgment and (2) when it is subject to no further review or correction in any other state tribunal).[6]
The FDIC directs us to the broad language of § 1819 in arguing that the statute authorizes removal in this case. Under this reasoning, because the statute does not specifically prohibit appellate removal, it authorizes it. Appellees, on the other hand, insist that the language is so broad that the statute is silent on this issue and that the FDIC should not be able to remove cases at this stage of state proceedings. To resolve this issue, we must look to the plain language and meaning of FIR-REA, the Constitutional authority of Congress to grant this sort of removal jurisdiction, and whether there is any reason to think that Congress could not have intended this result.
A. Plain Meaning of the Statute.
As in any case requiring statutory construction, the High Court has instructed us to adhere to the plain language of the law unless “literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.” Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982). The Supreme Court recently reaffirmed this standard in Demarest v. Manspeaker, which involved 28 U.S.C. § 1821. — U.S. -, 111 S.Ct. 599, 112 L.Ed.2d 608 (1991). In Demarest, the Court said, “We do not believe that this is one of those rare cases where the application of the statute as written will produce a result ‘demonstrably at odds with the intentions of its drafters.’ ” Id. 111 S.Ct. at 604. We agree that, on its face, the language of 12 U.S.C. § 1819(b)(2)(B) allows removal at the procedural posture in which this case comes to us.[7] The statute states that the FDIC may “remove any such action, suit, or proceeding from a state court to the appropriate United States district court” (emphasis supplied). The statute’s plain language is quite plain: Any action in a state court may be removed. This language does not limit removable actions to those that have not yet reached a state trial court judgment, nor does it limit removable actions to those that come to the federal courts from a specific state court (i.e., from state trial, as opposed to appellate, court). Furthermore, the contrast between the broad “a state court” and the specific “United States district court” within the *517 same sentence strongly suggests that the drafters intended the meaning urged by the FDIC.
Like the Eleventh Circuit, which considered this issue under § 1819(b)'s predecessor statute, we can “discern no reason to confine the interpretation of ‘action [from a State court]’ to actions that have not reached judgment.” In re Savers Federal Savings & Loan Assoc., 872 F.2d 963, 966 (11th Cir.1989). In In re Savers a debtor sued a financial institution in state court claiming as here, breach of contract and fraud and the institution counterclaimed to recover on the debtor’s note. After judgment and after denial of post-trial motions for hearing, new trial, and remittitur, the FSLIC was appointed conservator of the institution. It then filed notice of removal. The district court remanded concluding that the case was completed in state court and that defendant was, in effect, seeking appeal. The Eleventh Circuit granted mandamus and vacated the remand on the basis of § 1819(b)(2)(B).
The Eleventh Circuit framed the question as “whether after there has been a final judgment by the state trial court, but when the period for appeal has not yet lapsed, a case ceased to be an ‘action from a state court.’ ” 872 F.2d at 965-66. The court concluded that it did not and stated: “Had Congress intended to limit the removal, power of FSLIC to suits pending before a state trial court, it could have explicitly stated as much, as it did in ... 12 U.S.C. § 632....” Id. at 966.
In the instant case, it is true, removal is sought from the state appellate court whereas in Savers no appeal had yet been filed. The significant factor, however, is that state appellate proceedings had not yet been exhausted when removal was effected. Accord Murray v. Ford Motor Company, 770 F.2d 461, 463 (5th Cir.1985) (per curiam); Butner v. Neustadter, 324 F.2d 783 (9th Cir.1963); Munsey v. Testworth Laboratories, Inc., 227 F.2d 902, 903 (6th Cir.1955) (per curiam). In FDIC v. Yancey Camp Development, 889 F.2d 647, 648 (5th Cir.1989), a case which was on appeal, we allowed removal and the district court set aside a default judgment.
Therefore, unless Congress lacks the power under Article III of the United States Constitution to confer federal jurisdiction upon federal district courts in cases such as this one, or unless Congress could not have intended to do so when it enacted FIRREA, the district court erred in remanding this action to the state court.
B. Article III Power to Create Jurisdiction in Federal District Courts.
While it is black letter law that “Congress may not expand the jurisdiction of the federal courts beyond the bounds established by the Constitution,” Verlinden B.V. v. Central Bank of Nigeria, 461 U.S. 480, 491, 103 S.Ct. 1962, 1970, 76 L.Ed.2d 81 (1983), the power of Congress to authorize removal of cases on appeal has been repeatedly affirmed. See Martin v. Hunter’s Lessee, 14 U.S. (1 Wheat.) 304, 349, 4 L.Ed. 97 (1816) (“Congress ... may authorize removal either before or after judgment.”); Gaines v. Fuentes, 92 U.S. 10, 18, 23 L.Ed. 524 (1876); Tennessee v. Davis, 100 U.S. 257, 269, 25 L.Ed. 648 (1880). Congress, however, has seldom chosen to exercise this power,[8] and we must decide whether it has done so by enacting the FDIC removal statute.
C. The FDIC Removal Statute.
1. History.
Special considerations arise because § 1819 is a jurisdictional statute. Jurisdictional statutes must be interpreted with an eye towards history.[9] The opponents *518 would have us believe that adopting the FDIC’s view of § 1819 thoughtlessly and improvidently pushes “arising under” jurisdiction into a brave new world of expanded and uncontrollable growth, with no historical basis for this broadened approach. A review of the history of federal jurisdiction reveals that this statute does not carve out a new type of arising under jurisdiction never before seen. Rather, FIRREA returns us to an older version of arising under jurisdiction that existed until the early part of this century.
In Osborn v. Bank of the United States, 22 U.S. (9 Wheat.) 738, 822, 6 L.Ed. 204 (1824), Justice Marshall expounded on the outer limits of Article III jurisdiction: “when a question to which the judicial power of the Union is extended by the constitution forms an ingredient of the original cause, it is in the power of Congress to give the circuit courts jurisdiction of that cause.” Osborn “reflects a broad conception of ‘arising under’ jurisdiction, according to which Congress may confer on the federal courts jurisdiction over any case or controversy that may call for the application of federal law.” Verlinden, 461 U.S. at 492, 103 S.Ct. at 1970. Even if the only issues to be decided are ones of state law, Article III permits the exercise of jurisdiction if one of the parties is a federal corporation. See, e.g., The Bank of United States v. Planters’ Bank of Georgia, 22 U.S. (9 Wheat.) 904, 6 L.Ed. 244 (1824).
Congress, however, did not actually grant the lower federal courts removal jurisdiction over federal question eases until 1875.[10] This statute, the predecessor to 28 U.S.C. § 1441, was given an expansive interpretation in the Pacific Railroad Removal Cases, 115 U.S. 1, 5 S.Ct. 1113, 29 L.Ed. 319 (1885). The Pacific Railroad Court relied on Osborn to hold that “every case, irrespective of its nature, brought by or against a federally charted [sic] corporation is a suit arising under the ‘laws of the United States.’ ” Frankfurter, Distribution of Judicial Power Between United States and State Courts, 13 Cornell L.Q. 499, 509 (1928).
The expansive reading given by the Pacific Railroad Court to “arising under” was soon curtailed. Id. See also Romero, 358 U.S. at 379 n. 50, 79 S.Ct. at 484 n. 50. For example, 28 U.S.C. § 1331, is interpreted more narrowly than the Constitution permits. Verlinden, 461 U.S. at 494-95, 103 S.Ct. at 1971-72. The general removal statute, 28 U.S.C. § 1441, is also not interpreted as broadly as it could be. See Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108, 61 S.Ct. 868, 872, 85 L.Ed. 1214 (1941) (the “policy of the successive acts of Congress regulating the jurisdiction of the federal courts is one calling for the strict construction of [removal]”); Willy v. Coastal Corp., 855 F.2d 1160 (5th Cir.1988), appeal after remand, 915 F.2d 965 (5th Cir.1990), aff'd, — U.S. -, 112 S.Ct. 1076, 117 L.Ed.2d 280 (1992). See also Collins, The Unhappy History of Federal Question Removal, 71 Iowa L.Rev. 717 (1986).
It is clear that no federal jurisdiction exists over the present dispute under either 28 U.S.C. § 1331 or § 1441 because the issues are governed by state law and federal law is a small ingredient of the dispute. See Gully v. First National Bank at Meridian, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936) (for a suit to “arise under” federal law, a “right or immunity *519 created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiffs cause of action”); Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). It is equally clear that Congress enacted 12 U.S.C. § 1819 precisely so that the FDIC could enjoy federal question jurisdiction similar to that articulated in Osborn and the Pacific Railroad Removal Cases. See Pernie Bailey Drilling Co. v. FDIC, 905 F.2d 78 (5th Cir.1990); Franklin National Securities Litigation v. Andersen, 532 F.2d 842 (2d Cir.1976); FDIC v. George-Howard, 153 F.2d 591 (10th Cir.), cert. denied, 329 U.S. 719, 67 S.Ct. 53, 91 L.Ed. 623 (1946).
Thus, nothing in the history of federal jurisdiction compels us to ignore the plain meaning of § 1819 and find that it creates a more restricted type of removal jurisdiction than its language allows. Similarly, a broader look at the ways in which the statute enhances the FDIC’s procedural, and in particular post-judgment, powers reveals nothing inconsistent with our finding that it authorizes removal in this case.
2. Other Procedural Advantages in FIR-REA.
We recently recognized an important way FIRREA increases the FDIC’s post-judgment powers in Resolution Trust Corp. v. McCrory, 951 F.2d 68, 71 (5th Cir.1992). In that case, we held that FIR-REA permitted federal regulators to assert their special defenses for the first time on appeal. See also Union Federal Bank v. Minyard, 919 F.2d 335, 336 (5th Cir.1990) (FDIC allowed to raise special defense for first time on appeal because, as the Corporation was not a party in the trial court, it had neither the occasion nor opportunity to raise it below); FDIC v. Castle, 781 F.2d 1101, 1106 (5th Cir.1986) (FDIC allowed to first raise defenses on appeal because applicability of defenses clear under relevant statute). Generally, arguments not asserted until an action reaches an appellate level are lost. See, e.g., Hulsey v. State of Texas, 929 F.2d 168, 170 (5th Cir.1991), and cases cited therein. FIRREA confers a powerful litigation weapon by making such usually untimely arguments available to the FDIC. But see Baumann v. Savers Federal Savings & Loan Assoc., 934 F.2d 1506, 1511 (11th Cir.1991) (holding that FIRREA does not allow Resolution Trust Corporation to raise issues on appeal which were not raised below), petition for cert, filed, (U.S. January 6, 1992).
Furthermore, 12 U.S.C. § 1819(b)(2)(C) allows the FDIC to appeal orders remanding removed actions to state courts. Under the general removal statutes, such orders are not appealable. 28 U.S.C. § 1447(d). In addition, the FDIC can remove in any case to which it is a party, even though generally only defendants can remove. 28 U.S.C. § 1441(a). In Lazuka v. FDIC, 931 F.2d 1530, 1535 (11th Cir.1991), the Eleventh Circuit held that § 1819 allows the FDIC to overcome the “well-pleaded complaint” rule. Under this rule, the basis for federal jurisdiction must appear on the face of the complaint. Caterpillar Inc. v. Williams, 482 U.S. 386, 392,107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). Section 1819 allows the FDIC to invoke federal jurisdiction regardless of what appears in the complaint. The Lazuka court found that, in enacting FIRREA, “Congress used very strong language to afford the FDIC every possibility of having a federal forum within the limits of Article III.” Id.[11] Although this is not a post-judgment advantage, it is another indication of the importance Congress placed on getting cases falling under the scope of FIRREA into federal courts.
Cumulatively, these procedural advantages bestowed by Congress tremendously increase the FDIC’s ability to carry out its regulatory and enforcement responsibilities under FIRREA. These advantages allow the FDIC to step into the shoes of a troubled financial institution at any stage of proceedings without being penalized for the timing of that substitution and to effectively and aggressively protect the institu *520 tion’s interests and assets. Our finding that § 1819 allows removal in this case is completely consistent with the other procedural advantages FIRREA gives the FDIC and with the underlying goal of promoting uniform federal, as opposed to state, regulation and supervision of thrift institutions.
D. Procedural Results of Allowing Appellate Removal.
Appellees argue against finding jurisdiction under FIRREA because of the procedural consequences. Their argument goes like this: If we allow removal after a final state court judgment has been entered and where Rule 60 relief is not available, the federal district court would have no original jurisdiction to exercise. Basically, it would face two choices. First, it could review the state court judgment in an appellate posture. We make no indication of the propriety of such action because it is not necessary to force district courts into this role when the other role available to them does not present such complex constitutional and jurisdictional issues.
This second option is for the district court to take the state judgment as it finds it, prepare the record as required for appeal, and forward the case to a federal appellate court for review. We are not persuaded that this so-called “rubber-stamping” by district courts is so at odds with Article III jurisprudence that it precludes following the plain language of the statute or that Congress could not have intended this result.
The dissenters argue that district courts, in order to exercise original jurisdiction, must “judge something” in order for there to be a case or controversy before them under Article III. The case or controversy requirement does not, however, preclude federal appellate courts from remanding cases to district courts on a regular basis with instructions to take a prescribed action, such as enter judgment for a specified party. See, e.g., Mulligan v. Schultz, 848 F.2d 655, 658 (5th Cir.1988) (district court’s dismissal for lack of subject matter jurisdiction vacated and case remanded with instructions to enter judgment for appel-lees); Ferguson v. Heckler, 750 F.2d 503, 505 (5th Cir.1985) (district court’s upholding of an AU’s determination under Social Security Act reversed and case remanded with instructions to enter judgment in favor of the claimant); Thorne v. Jones, 765 F.2d 1270, 1278 (5th Cir.1985) (district court’s judgment against defendants for violating plaintiffs’ constitutional rights reversed and case remanded with instructions to enter judgment for the defendants) cert. denied, 475 U.S. 1016, 106 S.Ct. 1199, 89 L.Ed.2d 313 (1986). The district court’s role in these remand situations is no less mechanical and involves no more active a judicial role than does adopting a state court judgment and sending the proceeding to an appellate court.[12]
We have been presented with a parade of horribles which it is argued will follow from our holding. These premonitions unnecessarily complicate the matter. A case removed from state court simply comes into the federal system in the same condition in which it left the state system. Granny Goose Foods, Inc. v. Brotherhood of Teamsters, Etc., 415 U.S. 423, 435-36, 94 S.Ct. 1113, 1122-23, 39 L.Ed.2d 435 (1974). For instance, if the notice of appeal was adequate in the state court system, it should be deemed adequate when it enters the federal courts, regardless of whether the state technical requirements for notice of appeal differ from the federal. Granny Goose, 415 U.S. at 435-36, 94 S.Ct. at 1122-23 (“Judicial economy is promoted by providing that proceedings had in state court shall have force and effect in federal court, so that pleadings filed in state court, for example, need not be duplicated in federal court.”).
Finally, we do not intend by the holding in this case to suggest that the FDIC removal statutes “effect a wholesale replacement” of the general removal statutes *521 found in 28 U.S.C. §§ 1441-51. We agree that § 1819(b)(2)(B) invokes § 1441 by referring to “the appropriate United States District Court” and that FIRREA’s lack of provisions for the mechanics of removal necessitates reliance on the general schema. Indeed, we recently held that the FDIC must adhere to the timely filing requirements of the general removal statutes. FDIC v. Loyd, 955 F.2d 816 (5th Cir.1992) (28 U.S.C. § 1446(b) timely filing requirement applies to the FDIC under FIRREA). FIRREA, however, confers a specific removal power to a federal corporation. To the extent that the specific powers or mechanisms in the statute are inconsistent with the general removal statutes, FIRREA supersedes the general statutes. This holding is consistent with the Eleventh Circuit’s in Lazuka v. FDIC, which, like our decision in Loyd, held that removal under FIRREA does fit into the general removal scheme. 931 F.2d at 1536 (concluding that “the FIRREA removal provisions located at 12 U.S.C. § 1819 should be viewed as specific exceptions from the relevant provisions of general removal procedure, located at 28 U.S.C. §§ 1441, 1446, 1447” but reaching a different conclusion than Loyd concerning when the 30-day filing period under 28 U.S.C. § 1446 begins to run). Because the statutes and the law that has evolved from them conflict on the issue before us, FIRREA controls.
II. Sanctions
Since we reverse the district court’s decision to remand the instant appeal, it is clear that its award of sanctions for improper removal must also be reversed.

Conclusions

The decision of the district court remanding this matter and assessing sanctions is REVERSED, its remand order is VACATED and this matter is REMANDED to the district court for further proceedings.

. Although the FIRREA was enacted after the current proceeding was initiated, it is clear that the FDIC may utilize it. See Turboff v. Merrill Lynch, Pierce, Fenner, & Smith, 867 F.2d 1518, 1521 (5th Cir.1989) ("When Congress adopts statutory changes while a suit is pending, the effect of which is not to eliminate a substantive right but rather to change the tribunal which will hear the case, those changes&emdash;barring specifically expressed intent to the contrary&emdash;will have immediate effect.") (citing Hallowell v. Commons, 239 U.S. 506, 36 S.Ct. 202, 60 L.Ed. 409 (1916)); In re Resolution Trust Corp., 888 F.2d 57, 58 (8th Cir.1989).

. 12 U.S.C. § 1819(b)(2)(D), which relates to situations in which state, as opposed to federal, authorities appoint the FDIC as receiver, which involve only a state depository insurance system, and which require only the interpretation of state law, does not apply to this case.
While this matter was pending before us, Subsection (b)(2)(B) was amended to add at the end thereof the following: "before the end of the 90-day period beginning on the date the action, suit, or proceeding is filed against the Corporation or the Corporation is substituted as a party-”

. The House Report on FIRREA explained the problem with having federal and state regulatory systems simultaneously supervising thrift institutions: "In addition to having greater powers, many state-chartered thrifts found a far less rigorous regulatory and supervisory environment at the state level. ... As long as the federal government was responsible for picking up the tab for a failed state-chartered thrift, there was no great incentive for many state legislatures to deny the sweeping demands for additional investment powers made by the thrift industry. The results were tragic. Seventy percent of all FSLIC expenditures during 1988 went to pay for problems created by high-risk, ill-supervised, state-chartered thrifts in California and Texas. Those same two states absorbed 54 percent of FSLIC expenditures in 1987.” H.R.Rep. No. 101-54(1), 101st Cong., 1st Sess. at 297, reprinted in 1989 U.S.Code Cong. & Admin.News at 93.

.We do not decide whether this type of removal would be proper under 28 U.S.C. § 1441. First, the FDIC could not remove the instant case under § 1441. The dispute hinges on state law and, thus, there is no federal question jurisdiction. Second, it is uncertain whether the FDIC may utilize § 1441 to effectuate removal in any case, not just the present one. In FDIC v. Sumner Financial Corp., 602 F.2d 670 (5th Cir.1979), we held that the predecessor statute to 12 U.S.C. § 1819(b)(2) was a complete jurisdictional scheme and that both original and removal jurisdiction over the FDIC was proper only if the case fell within the ambit of § 1819. Id. at 677-80. See also FDIC v. Elefant, 790 F.2d 661 (7th Cir.1986). It is not entirely clear, however, that Sumner is still good law. In FSLIC v. Ticktin, 490 U.S. 82, 109 S.Ct. 1626, 104 L.Ed.2d 73 (1989), the Supreme Court held that the statute granting jurisdiction over FSLIC, 12 U.S.C. § 1730(k)(l), was not exclusive and did not preclude the exercise of jurisdiction under other grants of jurisdiction. The FSLIC jurisdictional statute was very similar to the statutory predecessor to the FDIC jurisdictional statute, and Ticktin, therefore, calls into question the result in Sumner.

. Furthermore, the modern view of removal is that it is more closely akin to original than to appellate jurisdiction because once the case is removed, it is treated as if it had commenced in federal court. See Freeman v. Bee Machine Co., 319 U.S. 448, 452, 63 S.Ct. 1146, 1148, 87 L.Ed. 1509, rehearing denied, 320 U.S. 809, 64 S.Ct. 27, 88 L.Ed. 489 (1943); Saveli v. Southern Ry., 93 F.2d 377, 379 (5th Cir.1937). The older approach to removal jurisdiction viewed removal as an appeal because the proceeding did not commence in federal court. See, e.g., Barrow v. Hunton, 99 U.S. 80, 25 L.Ed. 407 (1879). Under the modern understanding, removing this case does not constitute the appeal of a state court judgment to federal court.

. The FDIC contends that the language of 12 U.S.C. § 1821(d)(13)(B) establishes its right to remove appellate proceedings. This subsection states: “In the event of any appealable judgment, the Corporation as conservator or receiver shall have all the rights and remedies available to the insured depository ... and the Corporation in its corporate capacity, including removal to Federal court and all appellate rights.” Although we agree that this case is removable, we cannot accept this argument. While § 1821 makes it clear that the FDIC may remove a suit after judgment, it does not clearly establish that *517 the FDIC may remove a case which is on appeal.

. Congress enacted at least one statute authorizing post-judgment removal during the Reconstruction era. See Habeas Corpus Act of 1863, ch. 81, § 5, 12 Stat. 755, 757 ("And it shall be lawful in any such action or prosecution ... after final judgment, for either party to remove and transfer, by appeal, such case.”)

. Justice Frankfurter in Romero v. International Terminal Operating Co., 358 U.S. 354, 360, 79 S.Ct. 468, 473-74, 3 L.Ed.2d 368 (1959), explained:
*518 [ajbstractly stated, the problem is the ordinary task of a court to apply the words of a statute according to their proper construction. But “proper construction" is not satisfied by taking the words as if they were self-contained phrases. So considered, the words do not yield the meaning of the statute. The words we have to construe are not only words with a history. They express an enactment that is part of a serial, and a serial that must be related to Article III of the Constitution, the watershed of all judiciary legislation, and to the enactments which have derived from that Article.
If the history of the interpretation of judiciary legislation teaches anything, it teaches the duty to reject treating such statutes as a wooden set of self-sufficient words.... [We must not forget that it] is a statute, not a Constitution, we are expounding.

. Act of March 3, 1875, ch. 137, § 2, 18 Stat. 470.

. Additionally, it is even possible for parties other than the FDIC to remove an action once the FDIC becomes a party. FDIC v. Otero, 598 F.2d 627 (1st Cir.1979).

. A compromise to the case or controversy issue would be to allow removal only when Fed.R.Civ.P. 60 relief is available. We are certain, however, that Congress did not intend to deprive the parties to this dispute of their right to appeal and to relegate them to relief under Rule 60 when it expanded the FDIC removal power by enacting the FDIC removal statute.