**UNITED STATES of America, Appellee,**

v.

**Ebrahim ABDI, Defendant–Appellant.**

**Docket No. 97–1617.**

United States Court of Appeals,
Second Circuit.

Argued April 7, 1998.

Decided April 27, 1998.

Steven Siegel, Asst. U.S. Atty. for Eastern District of New York, Brooklyn, NY (Zachary W. Carter, U.S. Atty., Emily Berger, Asst. U.S. Atty., of counsel), for Appellee.

Colleen P. Cassidy, Legal Aid Society, Federal Defender Division, Appeals Bureau, New York City, for Appellant.

Before: WINTER, Chief Judge, McLAUGHLIN, and CALABRESI, Circuit Judges.

WINTER, Chief Judge:

Ebrahim Abdi appeals from a conviction by a jury before Judge Ross for importing opium into the United States in violation of 21 U.S.C. § 952(a). During the trial, the district court admitted, for the purpose of impeaching Abdi, a statement Abdi made to an Immigration and Naturalization Service ("INS") agent. This statement was given in an INS-initiated custodial interview, conducted after Abdi's arraignment and retention of counsel, but without his attorney present.

On appeal, Abdi raises several arguments. However, we reach only the question of whether the admission of this statement, which was error under *United States v. Spencer*, 955 F.2d 814 (2d Cir.1992), was harmless. Because we conclude that the admission was not harmless and that the conviction must be vacated on this ground, we do not consider Abdi's other arguments.

## BACKGROUND

On November 10, 1995, Abdi arrived at JFK International Airport on a flight originating in Iran. While in route, Abdi either filled out, or had someone else fill out for him, a Customs declaration card indicating that he was not bringing into the United States goods acquired abroad. After departing the plane, Abdi collected two suitcases, one black and the other black-gray tweed, at the baggage area. He then brought the suitcases and a brown leather carry-on bag to the Customs desk. Customs Inspector Pedro Rivera conducted a search of Abdi and his bags. The inspector first determined that the tags on the bags matched the baggage-claim stubs on Abdi's ticket folder.

Rivera testified that he then took Abdi's Customs declaration card and asked Abdi several routine questions. One of these questions was whether Abdi had brought any gifts or packages into the United States for someone else, to which Abdi answered, "No."

Rivera then looked inside the black suitcase and found three wooden plaques. After tapping on a plaque and hearing a muffled sound, Rivera x-rayed the plaque and discovered that it was hollow. He then punched a hole in the plaque and found that it was filled with opium. At this point, Rivera testified, Abdi asserted that a stranger had given him the black suitcase. Rivera then called for senior inspectors, arrested Abdi, and began a more thorough search of the three bags.

Detective Albert Matousek arrived thereafter and took Abdi to his office for further processing. Matousek testified that as part of this processing he asked Abdi a number of questions, including his name, address, phone number, employer, and date of birth. Matousek then started to read a *Miranda* warning to Abdi but never finished because Abdi indicated that he did not speak English very well and did not understand what Matousek meant by a "right to remain silent." Matousek noted in his report that a "language barrier" prevented him from communicating the warnings to Abdi and, for this reason, he abstained from interviewing Abdi.

Matousek also testified that Abdi asked to place a telephone call. Matousek consented but asked Abdi to speak only in English. Abdi placed a call in Matousek's presence and spoke both in English and in a foreign language. He then handed the phone to Matousek and asked Matousek to explain the situation to the person on the phone, Abdi's wife.

Finally, Matousek testified that a sales receipt was found in the tweed suitcase—a bag that indisputably belonged to Abdi. This receipt concerned the sale of at least one wooden plaque with a description matching the characteristics of at least one plaque discovered in the black suitcase. The government argued at trial that the presence of the receipt in the tweed suitcase proved that Abdi had purchased the plaques and, therefore, knew they were filled with opium.

Abdi testified as follows. He is a resident of the United States who was born in Teheran, Iran, speaks Farsi, and understands very little English. In September 1995, Abdi learned that his mother, who was in Iran, had suffered a stroke and was hospitalized. Abdi then travelled to Iran to visit her. Abdi testified that on the night before leaving Iran for the United States, he went to a gathering at the house of an old family friend named Hadi. At this gathering, Hadi mentioned to Abdi that one of Hadi's friends had a suitcase to ship to the United States and asked Abdi to carry this suitcase on his return trip. Because Hadi was a trusted, family friend, Abdi consented and agreed to collect the suitcase from Hadi's friend at the airport. Abdi further testified that the next day, he encountered an unknown man at the airport carrying a sign with Abdi's name on it. The stranger introduced himself as Hadi's friend and handed the black suitcase to Abdi. The stranger also told Abdi that the suitcase was for his daughter but that he did not know his daughter's address. Consequently, Abdi gave the stranger his own address, and it was agreed that the daughter would contact Abdi. Abdi further testified that he examined the contents of the stranger's bag but did not see anything suspicious, only clothes and three wooden plaques. He had no idea that opium was in the plaques and had no intention of bringing drugs into the United States.

Abdi also testified that another passenger on the plane translated and partially completed the Customs declaration for him. Abdi denied that he was asked by Rivera if he was bringing any gifts or packages into the United States. He stated that, after the opium was discovered, he witnessed Customs agents mixing up the contents of the three bags in their haste to conduct the search.

Given the Customs declaration and Rivera's testimony as to Abdi's denying that he was carrying a package for anyone else, a key issue at trial was Abdi's ability to speak English. Abdi presented a great deal of evidence about his inability to speak or understand English. For example, four of his acquaintances testified that Abdi had a very

limited ability to speak English. And, Abdi, through a Farsi interpreter, testified that he could not communicate in English well.

The government sought to disprove Abdi's claim of difficulties with English by introducing, during its cross-examination of him, evidence demonstrating his English-speaking ability. Specifically, the government offered Abdi's statement taken down by the INS agent during the interview described above. The statement was in English and obtained from Abdi without an interpreter. The interview was custodial and initiated by the INS agent. It occurred after Abdi's arraignment and retention of counsel, but without Abdi's attorney being present. The statement was signed by Abdi but was written by the INS agent. The government sought to use the statement to prove that Abdi speaks English well because it records a number of fluent English statements supposedly made by him. For example, the statement records Abdi as giving the following answer to the question "Who were you supposed to deliver [the black suitcase] to?":

> The man told me that his daughter was in the process of moving so he would call her and give her my address in California and she would get in touch with me.

Abdi objected to the admission of the statement to the INS agent, arguing that there was no evidence that it reflected his actual words[1] and that it was elicited in violation of his Sixth Amendment right to counsel. The government made no claim that Abdi had waived his Sixth Amendment right to counsel but rather argued that the statement was admissible for impeachment purposes. The district court admitted the statement for the limited purpose of impeaching Abdi's credibility and, at the government's insistence, excluded testimony by Abdi that, before giving the statement, he had told the INS agent that he had a lawyer.

Abdi argues that the admission of his statement to the INS agent was reversible constitutional error. We agree.

## DISCUSSION

The Sixth Amendment right to counsel attaches at the "initiation of adversary judicial proceedings," such as arraignment. *See United States v. Gouveia,* 467 U.S. 180, 187–88, 104 S.Ct. 2292, 2296–98, 81 L.Ed.2d 146 (1984). Once the right has attached, the Sixth Amendment renders inadmissible in the government's case-in-chief, statements elicited by the government outside the presence of a defendant's counsel that are not accompanied by a waiver of this right. *See generally United States v. Henry,* 447 U.S. 264, 273–74, 100 S.Ct. 2183, 2188–89, 65 L.Ed.2d 115 (1980).

In *Michigan v. Jackson,* 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986), the Supreme Court adopted the prophylactic rule that once a defendant invokes his Sixth Amendment right in a government-initiated interrogation, any subsequent waiver of that right is presumed invalid, even if the waiver is knowing and voluntary. *Id.* at 629–32, 106 S.Ct. at 1407–09. Statements elicited in violation of this rule are inadmissible in the government's case-in-chief. *Id.* at 636, 106 S.Ct. at 1411. The Supreme Court revisited this issue in *Michigan v. Harvey,* 494 U.S. 344, 110 S.Ct. 1176, 108 L.Ed.2d 293 (1990), and held that a statement obtained in violation of *Jackson* may be used by the prosecution to impeach a defendant on cross-examination if the defendant, in fact, knowingly and voluntarily waived his Sixth Amendment right to counsel. *Id.* at 350–51, 110 S.Ct. at 1180–81. Thus, *"Harvey* limited *Jackson,* by holding that a statement obtained during police initiated questioning after a request for counsel, while violative of Sixth Amendment prophylactic standards, may be admissible to impeach a defendant on cross-examination if given after a knowing and voluntary waiver of his right to counsel." *United States v. Spencer,* 955 F.2d 814, 818 (2d Cir.1992). *Harvey* explicitly did not decide "the admissibility for impeachment purposes of a volun-

---

1. Abdi testified in English at trial that what he actually said to the INS agent was:

   > One old guy in airport Teheran give to me one luggage for his daughter and he said me— I said him give me your address to that. He say my daughter has new baby and he said apartment and children in apartment. He has no address and you give me your address and telephone number and my daughter call you.

tary statement obtained in the absence of a knowing and voluntary waiver of the right to counsel." *Harvey*, 494 U.S. at 354, 110 S.Ct. at 1182.

In *Spencer*, we addressed the issue left open in *Harvey* and held that, to be admissible for impeachment purposes, a statement elicited after the right to counsel attaches must be both voluntary and accompanied by a knowing and voluntary waiver of the defendant's right to counsel. *See United States v. Spencer*, 955 F.2d 814, 819–20 (2d Cir.1992); *see generally Edwards v. Arizona*, 451 U.S. 477, 482–84, 101 S.Ct. 1880, 1883–85, 68 L.Ed.2d 378 (1981) (defining a knowing and voluntary waiver). We observed that, "in the absence of a later waiver of the initially invoked right to counsel, any subsequent statement transgresses the core constitutional right to counsel, rather than a judicially created prophylactic rule for the protection of that right, and therefore should not be available to the prosecution for any purpose." *Spencer*, 955 F.2d at 820.

■ The government does not seriously dispute that Abdi's statement to the INS agent was admitted in violation of the rule established in *Spencer*. The INS agent initiated the interview after Abdi's arraignment and retention of counsel. It took place in a custodial setting without Abdi's attorney present. Abdi testified that the agent told him that he had no choice but to answer the questions. Abdi's counsel proffered testimony that Abdi told the investigator that he had a lawyer, but the court, at the government's objection, excluded it as irrelevant. The statement was then admitted at trial to impeach Abdi by showing his fluency in English. On these facts, *Spencer* is indistinguishable.

The government argues on appeal that the admission of the statement was harmless beyond a reasonable doubt and that, even if it

was prejudicial, we should remand for a determination of whether Abdi knowingly and voluntarily waived his right to counsel.

The government argues correctly that a harmless constitutional error is not reversible, *see Chapman v. California*, 386 U.S. 18, 21–24, 87 S.Ct. 824, 826–28, 17 L.Ed.2d 705 (1967). It notes the "overwhelming evidence" against Abdi and argues that the statement to the INS agent was cumulative of other evidence—such as Matousek's and Rivera's testimony regarding their conversations with Abdi—demonstrating Abdi's ability to understand English. However, we believe that the admission of the statement was not harmless "beyond a reasonable doubt." *See Chapman*, 386 U.S. at 24, 87 S.Ct. at 828.

To be sure, this is a close question. Abdi's defense rested on his improbable story of how the opium came into his possession and for whom it was destined. Nevertheless, we are reluctant to hold that the improbabilities inherent in his story are themselves so great that a serious impeachment of his testimony mattered not.

The fluent English statement[2] to the INS agent was used to depict Abdi, who as a witness spoke only broken-English, as a fraud. This undermined his entire testimony. Indeed, the government's summation contrasted Abdi's claimed lack of fluency with his statement to the INS agent and asked the jury to "[t]ake that [contrast] into consideration when you are thinking about whether or not to believe the defendant's story."

More specifically, if the jury accepted the statement to the INS agent as evidence of Abdi's fluency in English, it must have concluded that Abdi understood both the Customs declaration and Rivera's questions regarding whether he was carrying anything for someone else. If so, the jury would have to have found that Abdi's statement on the

---

**2.** We do note that, although Abdi does not challenge the substance of the statement, the statement is hardly powerful evidence of Abdi's fluency in English. The INS agent did not testify, and nothing in the record informs us of the extent to which the statement contains Abdi's actual words rather than the agent's rendition of their substance. Had the district judge sustained Abdi's objection on that ground, no one would have faulted her.

Customs declaration was intended to conceal the plaques. More devastatingly the jury also would have to have found that Abdi initially denied to Rivera that he was carrying something for someone else, only to change his story when the opium was discovered.

Again, the government in summation made exactly these arguments, mentioning both the declaration's statement that nothing acquired abroad was being brought into the country and Abdi's denial to Rivera that he was carrying packages for someone else. In doing so, the summation made it clear that Abdi's only defense to the implications of his understanding these communications was his claimed lack of fluency in English. As the prosecutor put it in summation, "He said these bags were his, that he wasn't carrying anything for anyone else until ... until that first plaque was probed. Then he changed his story, ladies and gentlemen."

Given the centrality of the fluency issue and the use by the government of the statement to the INS agent regarding that issue, we cannot say that its admission was harmless beyond a reasonable doubt. It may well be that even without the government's use of the statement, the jury would have convicted Abdi given his improbable version of events. The use of the statement, however, created a significant possibility that the jury never even considered the substance of his story.

■ With respect to whether we must remand for a hearing on whether Abdi knowingly and voluntarily waived his right to counsel before making the statement to the INS agent, we believe that the government, if evidence of waiver exists, should have offered it at trial. Faced with a Sixth Amendment claim, the government argued only that the statement was admissible for the limited purpose of impeachment. It made no claim of waiver, did not ask for a hearing, and made no offer of proof. Further, it objected to Abdi's telling the jury that he had informed the INS agent that he had an attorney. Based on this record, the waiver shoe is on the government's foot.

## CONCLUSION

We vacate the district court's judgment of conviction and remand for a new trial.