James **JENKINS**, also known as James Davis, III, also known as Free-King Afrika, Petitioner-Appellant,

v.

Arthur **LEONARDO**, Superintendent, Great Meadow Correctional Facility, Robert Abrams, Attorney General of the State of New York, and People of the State of New York, Respondents-Appellees.

No. 896, Docket 92-2614.

United States Court of Appeals, Second Circuit.

Argued Feb. 4, 1993.

Decided April 20, 1993.

Southern District of New York, Peter K. Leisure, J., denying his petition for a writ of habeas corpus. Jenkins was convicted in state court on charges of rape and related offenses. During the trial, the State impeached Jenkins with statements he made after he had been indicted and his Sixth Amendment right to counsel had attached. Jenkins made these statements from jail in a telephone conversation with his victim, who taped the conversation. The issue before us is whether the State violated Jenkins's Sixth Amendment right to counsel when it used those statements to impeach him at trial.

## I. Background

In late December 1983, Jenkins and Queen Ester Lacey left a club in White Plains in the early morning hours. Jenkins had asked Lacey to go with him to get a package from a friend. When Jenkins used a key to open the door of the apartment at which they had arrived, Lacey realized that they were at Jenkins's own apartment. Although Lacey did not want to enter, Jenkins persuaded her, explaining that he would just be a minute and that his mother, who also lived in the apartment, would not mind. Once inside, Jenkins raped Lacey at knife- and gun-point.

Released by Jenkins, Lacey immediately reported the rape to the police. Later that day and at police request, Jenkins voluntarily appeared at the police station, accompanied by his mother. The police read Jenkins the warnings required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and asked him if he understood his rights. Jenkins nodded, indicating that he did. When asked if he wished to talk, Jenkins responded, "I'm tired, leave me alone." Jenkins admitted having intercourse with Lacey, but he maintained she had consented. Jenkins refused to sign a *Miranda* card or give a written statement. Jenkins was arrested and later indicted by a Westchester County grand jury for rape and related offenses. He was incarcerated in the Westchester County Jail.

Jonathan C. Scott, Northport, NY, for petitioner-appellant.

Richard E. Weill, White Plains, NY, Second Deputy Dist. Atty. of Westchester County (Carl A. Vergari, Dist. Atty. of Westchester County, of counsel), for respondents-appellees.

Before: MESKILL, Chief Judge, FEINBERG and WINTER, Circuit Judges.

FEINBERG, Circuit Judge:

James Jenkins appeals from a judgment of the United States District Court for the

On April 17, 1984, Lacey received a collect call at her home. The caller identified himself as Sidney Thornton, a former boyfriend of Lacey's who was in jail at the time. Lacey realized that the caller was in fact Jenkins. Jenkins asked Lacey to come to the jail to talk about his case, but Lacey said there was nothing to discuss and hung up. She refused to accept two additional collect calls placed later that same day.

Lacey reported the calls to the police. Apparently anticipating that Jenkins might call again, the police provided Lacey with recording equipment and instructed her on how to use it. According to Lacey, the police also "told [her] to get [Jenkins] to talk about the rape." Shortly thereafter, on April 25, Jenkins made another collect call to Lacey, again representing himself as Thornton. Unlike her response to the last two calls, Lacey accepted this one and turned on the tape recording equipment. In an effort to get Lacey to drop the charges, Jenkins threatened Lacey and attempted to bribe her. In the course of the conversation, Jenkins also made various incriminating statements about the rape in response to questions asked by Lacey.

Before his trial in the state court, Jenkins moved to suppress the taped statements on the ground that they were obtained in violation of his Sixth Amendment right to counsel. The court refused to suppress Jenkins's statements threatening and attempting to bribe Lacey. These statements, the court found, had not been obtained in violation of Jenkins's right to counsel because they involved new crimes, namely, bribing and tampering with a witness. The statements concerning the rape, on the other hand, were ordered suppressed based on the court's finding that they were obtained in violation of Jenkins's right to counsel. According to the court, Jenkins was represented by counsel when Lacey taped the conversation, and Lacey was acting as a police agent when she elicited information from Jenkins concerning the rape.

At trial, Jenkins took the stand in his defense and made statements inconsistent with those recorded on the tape. Over objection, the trial court allowed the State to impeach Jenkins with the suppressed statements, finding that they were admissible for impeachment purposes under *People v. Harris*, 25 N.Y.2d 175, 303 N.Y.S.2d 71, 250 N.E.2d 349 (1969), aff'd, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971).

Jenkins was convicted on all charges. He was sentenced as a predicate felon to 10–20 years in prison on the rape conviction. His conviction was affirmed by the Appellate Division, 146 A.D.2d 804, 537 N.Y.S.2d 283 (1989), and his application for a certificate granting leave to appeal to the Court of Appeals was denied. 73 N.Y.2d 978, 540 N.Y.S.2d 1012, 538 N.E.2d 364 (1989).

Jenkins petitioned for a writ of habeas corpus in federal court, alleging that the State's use of the tape-recorded statements to impeach him at trial violated the Sixth Amendment; that other statements he made to the police at the time of his arrest were involuntary and obtained in violation of *Miranda;* and that he was denied the effective assistance of trial counsel.

The petition was referred to Magistrate Bernikow, who ruled against Jenkins on his *Miranda* and ineffective assistance of counsel claims. The magistrate recommended, however, that the writ be conditionally granted on the basis of Jenkins's Sixth Amendment claim. The district court agreed that the *Miranda* and denial of counsel claims were without merit, but the court rejected the magistrate's recommendation that Jenkins be granted relief on his Sixth Amendment claim. In the district court's opinion, "Jenkins' Sixth Amendment right to counsel was not violated, and ... even if that right was violated, [his] statements were properly admitted for impeachment purposes."

This appeal, in which Jenkins raises only his Sixth Amendment claim, followed.

## II. Discussion

At the threshold, the State argues that Jenkins has not exhausted his state court remedies with respect to his Sixth Amendment claim and that we must return this case to the state courts to give them the

first opportunity to rule on that claim. The district court, as well as the magistrate, rejected this argument, finding that Jenkins exhausted his state remedies when he "fairly presented [his claim] to the state courts." *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971); accord *Reid v. Senkowski,* 961 F.2d 374, 376 (2d Cir.1992) (per curiam); *Daye v. Attorney General of the State of New York,* 696 F.2d 186, 191 (2d Cir.1982) (in banc). Based on our review of the record, we agree with the district court's conclusion and so proceed to the merits.

## A. *Sixth Amendment*

Jenkins contends that Lacey, while acting as a state agent, deliberately elicited incriminating statements from him after his right to counsel had attached, thus violating the Sixth Amendment. He further contends that it was constitutionally impermissible for the State to use those incriminating statements to impeach him at trial. As noted, the district court rejected these contentions.

Once the right to counsel has attached, the "Sixth Amendment ... imposes on the State an affirmative obligation to respect and preserve the accused's choice to seek" the assistance of counsel. *Maine v. Moulton,* 474 U.S. 159, 171, 106 S.Ct. 477, 484, 88 L.Ed.2d 481 (1985). In a line of cases extending from *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), through *United States v. Henry,* 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980), to *Maine v. Moulton,* the Supreme Court has held that the State violates the Sixth Amendment when, acting through an undisclosed agent, it "deliberately elicit[s]" incriminating statements from an accused "after he ha[s] been indicted" and his right to counsel has attached. *Massiah,* 377 U.S. at 206, 84 S.Ct. at 1203; see also *Kuhlmann v. Wilson,* 477 U.S. 436, 459, 106 S.Ct. 2616, 2630, 91 L.Ed.2d 364 (1986); *Moulton,* 474 U.S. at 176–77, 106 S.Ct. at

487–88; *Henry,* 447 U.S. at 269, 100 S.Ct. at 2186. Moreover, a violation can arise even if it is the accused who initiates the conversation with the undisclosed state agent. See, e.g., *Moulton,* 474 U.S. at 174–76, 106 S.Ct. at 486–87; *Mealer v. Jones,* 741 F.2d 1451, 1454 (2d Cir.1984), cert. denied, 471 U.S. 1006, 105 S.Ct. 1871, 85 L.Ed.2d 164 (1985). In its most recent pronouncement, the Court emphasized that the "knowing exploitation by the State of an opportunity to confront the accused without counsel being present is as much a breach of the State's obligation not to circumvent the right to the assistance of counsel as is the intentional creation of such an opportunity." *Moulton,* 474 U.S. at 176, 106 S.Ct. at 487.

The district court found that Jenkins failed to establish a Sixth Amendment violation for two independent reasons. First, though acknowledging that the question was a "close one," the district court concluded that Lacey was "not acting as a state agent when she recorded Jenkins' phone call to her." On the district court's analysis, the fact that the police had instructed Lacey to gather information was "outweighed by the fact that she did not enter into an agreement with the police in which she was to obtain information from Jenkins in consideration for any kind of benefit." [1]

Second, the district court found that Lacey had not "deliberately elicited" incriminating statements from Jenkins. The court's conclusion was based on its findings that "Lacey was not motivated to deliberately elicit useful information from Jenkins in consideration for a monetary benefit, a reduction in sentence, or a cooperation agreement;" that it was "absolutely clear" to Jenkins by the time he placed his fourth call to Lacey that she "was cooperating with the government;" and that, unlike the accused in *Massiah* and its progeny, "Jenkins did not make incriminating statements to an individual with whom he was sharing

---

1. Magistrate Bernikow and the state trial court reached a contrary conclusion, as apparently did the Appellate Division, which stated that the telephone conversation was "recorded by the victim at the behest of the police." Cf. *United*

*States v. Panza,* 750 F.2d 1141, 1152 (2d Cir. 1984) (indicating that Sixth Amendment violation arises when otherwise private actor "act[s] on behalf of the government" in deliberately eliciting incriminating statements).

a jail cell, or to an accomplice or co-defendant, who was facing a situation similar to his."

█ We agree with the district court that these are close questions. But for present purposes, we assume without deciding that Lacey was a state agent and that she deliberately elicited incriminating statements from Jenkins. We nonetheless agree with the district court's conclusion that Jenkins's Sixth Amendment right to counsel was not violated because Jenkins waived his right.

B. *Waiver*

It is true, as in *Moulton* and *Massiah,* that a criminal defendant will not ordinarily be held to have assumed the risk that those to whom he speaks (after his right to counsel has attached) are state agents, even when those to whom he speaks are his co-defendants. Cf. *Moulton,* 474 U.S. at 176–77, 106 S.Ct. at 487–88; *Massiah,* 377 U.S. at 202, 84 S.Ct. at 1201. In this case, however, there were specific findings that Jenkins *knew* that Lacey—his victim—was cooperating with the police. The magistrate found that Jenkins "knew that Lacey was to testify for the prosecution when he talked with her." Likewise, the district court found that Jenkins "made his statements to an individual that he knew was cooperating with the police." These specific findings were not clearly erroneous. Together with Lacey's status as victim, they indicate that when Jenkins called Lacey, he was choosing to call someone he knew or should have known was a state agent.[2] Under these circumstances, the proper inquiry then becomes whether or not Jenkins waived his right to counsel.

In this connection, Jenkins cites to us *Michigan v. Jackson,* 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986), in which the Supreme Court established a "prophy-

lactic rule" intended to protect a criminal defendant's right to counsel. See *Michigan v. Harvey,* 494 U.S. 344, 345, 110 S.Ct. 1176, 1177, 108 L.Ed.2d 293 (1990) (explaining *Michigan v. Jackson* ). Under this rule, once an accused's right to counsel has attached and the accused has requested the assistance of counsel, any waiver of that right secured pursuant to a police-initiated interrogation is presumed invalid. See *id.;* see also *Patterson v. Illinois,* 487 U.S. 285, 291, 108 S.Ct. 2389, 2394, 101 L.Ed.2d 261 (1988).

It is debatable whether or not Jenkins can rely on *Jackson* because it is unclear whether or not Lacey's questioning of Jenkins constituted "police-initiated" interrogation, especially since it was Jenkins who made the call in the first place. It is difficult to tell from the record the extent to which, if any, Lacey steered the conversation toward the rape and, in this sense, "initiated" it. We need not decide that factual issue, nor the legal issue of what the effect of such "steering" would have been. For even if we assume, without deciding, that Jenkins's statements were taken in violation of *Jackson,* the State may nevertheless use those statements against him for impeachment purposes provided that they were given voluntarily and that Jenkins did in fact validly waive his right to counsel. See *United States v. Spencer,* 955 F.2d 814, 820 (2d Cir.1992). Because no one contends that Jenkins was coerced to make his incriminating statements, we focus on whether his waiver was valid.

A "determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Johnson v. Zerbst,* 304 U.S. 458,

**2.** On facts very similar to the present case, the court in *People v. Cribas,* 231 Cal.App.3d 596, 282 Cal.Rptr. 538 (1991), cert. denied, —— U.S. ——, 112 S.Ct. 1513, 117 L.Ed.2d 650 (1992), held that the accused's right to counsel had been violated. However, in *Cribas* the court noted that the accused "had no knowledge that he was speaking indirectly to the police," *id.,* 282 Cal.

Rptr. at 543, whereas here there were specific findings that Jenkins knew Lacey was cooperating with the police. In addition, the court in *Cribas* noted that it could not "candidly be asserted that [the defendant] voluntarily initiated the call." *Id.* at 543. Here, in contrast, Jenkins voluntarily called Lacey.

464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938); accord *United States v. Caba*, 955 F.2d 182, 185 (2d Cir.), cert. denied, —— U.S. ——, 113 S.Ct. 130, 121 L.Ed.2d 84 (1992). Waiver analysis is conducted in a "pragmatic" fashion, requiring us to "ask[ ] what purposes a lawyer can serve at the particular stage of the proceedings in question, and what assistance he could provide at that stage." *Patterson*, 487 U.S. at 298, 108 S.Ct. at 2397.

With respect to the validity of a waiver in the context of postindictment questioning, the "key inquiry" is whether the accused was "made sufficiently aware of his right to have counsel present during the questioning, and of the possible consequences of a decision to forego counsel." *Id.* at 292–93, 108 S.Ct. at 2395. The Supreme Court has provided the following guidance:

> Once it is determined that a suspect's decision not to rely on his rights was uncoerced, that he at all times knew he could stand mute and request a lawyer, and that he was aware of the State's intention to use his statements to secure a conviction, the analysis is complete and the waiver is valid as a matter of law.

*Id.* at 297, 108 S.Ct. at 2397 (quoting *Moran v. Burbine*, 475 U.S. 412, 422–23, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410 (1986)). In a similar vein, this court has recently said:

> Once an accused understands that he is under arrest and, after receiving the *Miranda* warnings, understands his right to remain silent, the potential consequences of speaking, and his right to counsel, including during interrogation, he is fully apprised of the information needed to make a knowing waiver of his sixth amendment right.

*United States v. Charria*, 919 F.2d 842, 848 (2d Cir.1990), cert. denied, —— U.S. ——, 112 S.Ct. 62, 116 L.Ed.2d 38 (1991).

In the present case, we agree with the district court that Jenkins validly waived his right to counsel. Keeping in mind that Jenkins knew Lacey was cooperating with the police but was nevertheless not only willing but—for his own reasons—anxious to talk to her, several factors persuade us that Jenkins's waiver was valid.[3]

First, Jenkins was read the *Miranda* warnings at the time of his arrest and was therefore informed of his right to have counsel present during questioning and of the consequences of waiving that right. Admittedly, we must discount the impact of the warnings since they were administered several months before Jenkins called Lacey. Cf. *Poyner v. Murray*, 964 F.2d 1404, 1413 (4th Cir.) (noting relevance of proximity between administration of warnings and statement by accused), cert. denied, —— U.S. ——, 113 S.Ct. 419, 121 L.Ed.2d 342 (1992). Still, by the time he made the call, Jenkins knew he had counsel to represent him. Indeed, Jenkins notes in his brief that he had been accompanied by his counsel at arraignment. On these facts, we can safely suppose that when Jenkins called Lacey, he "knew he could stand mute and request a lawyer."

Second, it was Jenkins who initiated the phone call to Lacey. Although this fact is irrelevant for purposes of determining the existence of a Sixth Amendment violation under *Massiah*, see, e.g., *Moulton*, 474 U.S. at 174–75, 106 S.Ct. at 486–87, it is relevant for purposes of assessing the validity of an accused's waiver where, as here, the agent is not undisclosed. See *Poyner*, 964 F.2d at 1413 (citing *Edwards v. Arizona*, 451 U.S. 477, 486 n. 9, 101 S.Ct.

---

**3.** In *United States v. Johnson*, 954 F.2d 1015 (5th Cir.1992), the Fifth Circuit refused to find that an accused waived his right to counsel when he made incriminating statements to his co-defendant (who was acting as a government agent), even though the accused knew that the co-defendant "had pled guilty, had provided a full statement to [the] police, and had agreed to testify for the prosecution." *Id.* at 1020. The *Johnson* court emphasized that, despite the accused's knowledge of these facts, he still did not specifi-

cally know that his co-defendant was acting as a government agent. The court therefore held that the accused was still entitled to the protection of *Massiah* and *Moulton*. See *id.* at 1021.

Although the facts in *Johnson* are similar to those here, we would note that in *Johnson* the co-defendant "acted to assure [the accused] that he was not a government agent," *id.* at 1020, whereas here Lacey made no such assurances to Jenkins. Moreover, here we deal with the victim, not a co-defendant.

1880, 1885 n. 9, 68 L.Ed.2d 378 (1981)). Here, not only did Jenkins initiate the contact with Lacey, he aggressively pursued it, making repeated calls to her. As the district court put it, Jenkins "brazenly made harassing phone calls to his rape victim, fully aware that she had cooperated with the police in the past."

Next, it is absurd to suppose that Jenkins wanted counsel to be present at—or even aware of—his conversation with Lacey. It must be remembered that the purpose of Jenkins's call was to scare or bribe Lacey into changing her story. True, Jenkins conceivably could have wanted counsel present—although we doubt it—if and when Lacey turned the conversation around to the rape. But we do not think that such parsing of the conversation makes any sense at all in the context of a threatening phone call to the victim of a crime.

Finally, when the courts determine the validity of a Sixth Amendment waiver, they may take into account an accused's familiarity with the criminal justice system. See, e.g., *United States v. Scarpa*, 897 F.2d 63, 69 (2d Cir.), cert. denied, 498 U.S. 816, 111 S.Ct. 57, 112 L.Ed.2d 32 (1990); *Poyner*, 964 F.2d at 1413. Accordingly, we note, as did the state court which ordered the statements suppressed, that Jenkins was "no stranger to the criminal justice system." The record reveals that Jenkins had been convicted of several offenses since 1981, including criminal mischief, reckless endangerment and criminal possession of stolen property. Less than one year before he assaulted Lacey, Jenkins had been convicted of burglary.

Under these circumstances, we agree with the district court that Jenkins voluntarily, knowingly and intelligently waived his Sixth Amendment right to counsel.

### III. Conclusion

In sum, because Jenkins made his statements voluntarily and because he validly waived his right to counsel, the State did not violate the Sixth Amendment when it used Jenkins's statements to impeach him at trial.

For the foregoing reasons, the judgment of the district court is affirmed.