PUBLISH

UNITED STATES COURT OF APPEALS

**Filed 9/4/96**

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

vs.

KENNEDY DENETCLAW,

      Defendant - Appellant.

No. 95-2222

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. CR 94-734-01)

---

Thomas B. Jameson, Assistant Federal Public Defender, Albuquerque, New Mexico, for Defendant-Appellant.

Tara C. Neda, Assistant United States Attorney (John J. Kelly, United States Attorney, with her on the brief), Albuquerque, New Mexico, for Plaintiff-Appellee.

---

Before KELLY, BRISCOE and LUCERO, Circuit Judges.

---

KELLY, Circuit Judge.

---

      Defendant-Appellant Kennedy Denetclaw was convicted of assault with a dangerous weapon, 18 U.S.C. §§ 113(c) and 1153; assault resulting in serious bodily

injury, 18 U.S.C. §§ 113(f) and 1153; and maiming, 18 U.S.C. §§ 114 and 1153, and sentenced to sixty-three months imprisonment. Mr. Denetclaw alleges that the district court improperly admitted impeachment evidence against him and improperly enhanced his sentence. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

## Background

On November 22, 1994, Kennedy Denetclaw, 34, a member of the Navajo Indian Tribe, appeared in the Navajo Nation tribal court and pled guilty[1] to the tribal misdemeanor offense of aggravated battery on both Mike Hernandez and Leyandrew Joe. On December 8, 1994, a federal grand jury indicted Kennedy Denetclaw on two counts of assault with a dangerous weapon (Hernandez and Joe), one count of assault resulting in serious bodily injury (Hernandez), and one count of maiming (Hernandez), all arising from the same incidents that were the subject of his tribal court convictions.

A jury trial was held in federal court, and the trial testimony revealed the following facts: On April 28, 1994, Travis Dez, 15, Daleric Dez, 15, and Roderick Joe, 14, were playing near the Denetclaw home. 3 R. at 34-35, 56-57, 82. William Denetclaw, Kennedy Denetclaw's 25-year-old brother, came outside and shouted at the boys. 3 R. at 58, 84. The boys ran away, but William began chasing Travis, who ran toward the Yazzie

---

[1]     Mr. Denetclaw claims that he pled "no contest," but he acknowledges that the tribal court judgment states that he "changed plea to guilty." 4 R. at 255-57. Mr. Denetclaw's tribal advocate stated in an affidavit, "I believe [] no contest is considered as a guilty plea." 1 R. doc. 61.

home.  3 R. at 35-36, 59, 229.  William caught Travis and began kicking him.  3 R. at 37.  Darrell Yazzie, 23, managed to stop William's attack on Travis, but when Kennedy Denetclaw arrived the attack resumed.  3 R. at 36-37, 47, 51-52.  Darrell testified that Kennedy attacked him from behind with a knife, but he managed to escape serious injury.  3 R. at 47-48.

Mike Hernandez, 23, and Leyandrew Joe, 19, were playing Nintendo when a neighbor boy informed them that Travis was being attacked.  Leyandrew and Mike went out, unarmed, to investigate, later joined by Roderick.  3 R. at 85, 100.  Leyandrew observed William kicking Travis with Kennedy watching.  3 R. at 99.  Mike could not see the attack on Travis because he is legally blind.  3 R. at 126-28.  Upon seeing Mike and Leyandrew approach, William left Travis and ran up to them.  3 R. at 100.  William attacked Mike, and Kennedy attacked Leyandrew, cutting him on the chin.  3 R. at 88, 102.  Leyandrew and Roderick fled, and the Denetclaws turned their full attention to Mike.  3 R. at 50, 62, 105.  Kennedy repeatedly cut Mike with his knife, causing five cuts to his face requiring 30-40 stitches.  3 R. at 132, 134-35, 138.

Kennedy Denetclaw testified that he and William had been drinking alcohol on their way home that day.  3 R. at 223-24.  He and his brother saw the boys outside, and William went out to talk to them.  Kennedy claimed that he watched William take Travis down, and that he went out to help his brother after seeing Darrell Yazzie come out of his house and strike William with an object.  3 R. at 229.  Kennedy claimed that he calmed

his brother down, and they walked away. 3 R. at 230. As they were leaving, they noticed the three men approaching, and a scuffle broke out. 3 R. at 231-32. Kennedy testified that Mike Hernandez was armed with a knife and that he pulled out his "pocketknife" to protect William from Mike. 3 R. at 232. He admitted that he cut Michael's hand during the struggle but claimed that he then lost his knife. 3 R. at 232-33; 4 R. at 253. He testified that he did not cut Leyandrew Joe and did not know how he got injured, 3 R. at 233; 4 R. at 257, and he speculated that Mike's facial wounds may have been self-inflicted, 4 R. at 255.

The jury convicted Kennedy Denetclaw of two counts of assault on Hernandez and one count of maiming but acquitted him of assaulting Joe. The district court imposed a two-level increase to the offense level for obstruction of justice pursuant to U.S.S.G. § 3C1.1 and sentenced Mr. Denetclaw to a total of sixty-three months imprisonment. This appeal followed.

Discussion

I. Tribal Court Pleas

Mr. Denetclaw contends that the trial court erred in allowing the tribal court pleas to be admitted as impeachment evidence. A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. United States v. Harmon, 918 F.2d 115, 117 (10th Cir. 1990). The issue of whether tribal court pleas may be admitted in federal

- 4 -

court is a question of law which we review de novo. United States v. Ant, 882 F.2d 1389, 1395-96 (9th Cir. 1989).

The trial court permitted the prosecution to impeach Mr. Denetclaw with the tribal court pleas under the rationale of Harris v. New York, 401 U.S. 222 (1971). 4 R. at 246. In Harris, the Supreme Court held that statements elicited in violation of Miranda v. Arizona, 384 U.S. 436 (1966), may be admitted to impeach the credibility of a defendant who testifies on his own behalf, even if such statements are not admissible in the prosecution's case-in-chief. Harris, 401 U.S. at 224-26. The Court stated, "Every criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury." Id. at 225.

Mr. Denetclaw challenges the trustworthiness of his tribal convictions, pointing to the lack of constitutional protections in tribal court, specifically the right to counsel. He claims that he did not realize that his tribal pleas could be used against him in federal court. 4 R. at 264; Aplt. Br. at 22-23. However, this is beside the point. Even assuming that Mr. Denetclaw was not afforded a Sixth Amendment right to counsel at his tribal court hearing, his tribal court pleas still remain admissible for the purpose of impeachment. Michigan v. Harvey, 494 U.S. 344, 345-46 (1990). In Harvey, the Supreme Court held that a statement taken in violation of the right to counsel could be used to "impeach a defendant's false or inconsistent testimony." Id. at 346.

The fact that Mr. Denetclaw may not have had full constitutional protections at his

tribal hearing, nor understood the consequences of his statements, does not alter the fact that he made such statements at that hearing. The fact remains that Mr. Denetclaw's pleas at the hearing were inconsistent with his story at trial, and the district court properly allowed the prosecution to explore this during its cross-examination of Mr. Denetclaw. Mr. Denetclaw's tribal pleas were only allowed for the limited purpose of impeachment, not as substantive evidence, and thus we focus not on the truthfulness of his pleas but rather on the fact that his pleas differ from his later testimony. The pleas are no different from any other inconsistent statements made by Mr. Denetclaw to a third person which could be used to impeach him. See Harris, 401 U.S. at 225-26.

Our holding is entirely consistent with the Ninth Circuit's opinion in United States v. Ant, 882 F.2d 1389 (9th Cir. 1989), on which defendant relies. In Ant, the Ninth Circuit held that the government could not use a defendant's tribal court guilty plea as substantive evidence of guilt in his federal trial arising from the same incident because his tribal plea lacked constitutional protections. Id. at 1395-96. However, in this case, the district court did not allow the use of the tribal pleas as substantive evidence, but only for impeachment purposes. Thus, the constitutional concerns underlying Ant are not present in this case.

Mr. Denetclaw's claim that his pleas were used against him as a confession distorts the issue. So too does Mr. Denetclaw's argument regarding the requirements for a guilty plea in federal court. These arguments ignore the fact that the tribal pleas were only

admitted for the limited purpose of impeachment. Regardless of how Mr. Denetclaw attempts to characterize the facts, the pleas were not construed as guilty pleas in federal court, nor as a confession. The fact that the pleas might fail to meet constitutional requirements for a federal guilty plea or a confession is irrelevant.

Mr. Denetclaw contends that his tribal court pleas were not statements nor were they inconsistent with his trial testimony. We disagree. A tribal court plea clearly qualifies as a "statement;" indeed, silence may qualify as a "statement" in certain circumstances. United States v. Strother, 49 F.3d 869, 874 (2d Cir. 1995). Mr. Denetclaw claims that he did not expressly admit guilt in the tribal court proceeding. However, "'statements need not be diametrically opposed to be inconsistent.'" Id. (quoting United States v. Agajanian, 852 F.2d 56, 58 (2d Cir. 1988)). During Mr. Denetclaw's testimony at trial, he claimed self-defense and that he lost his knife early in the struggle. 3 R. at 232-33. These statements could be understood as a denial of culpability as well as a denial that he inflicted the knife wounds on Hernandez and thus fair game for impeachment. Accord United States v. Havens, 446 U.S. 620, 628 (1980). The inconsistency between "no contest" or guilty pleas to aggravated battery charges and Mr. Denetclaw's later claim of innocence is apparent; moreover, we note that Mr. Denetclaw was given the opportunity to explain his prior inconsistent statements, 4 R. at 262-65.

Mr. Denetclaw claims that the tribal court convictions were inadmissible to

impeach him under Federal Rule of Evidence 609(a). This position is without merit because the convictions were not introduced under Rule 609(a). Rule 609(a) pertains to the use of a conviction for the purpose of character impeachment--the conviction itself as an indication of lack of trustworthiness. See Fed. R. Evid. 609(a) advisory committee notes ("There is little dissent from the general proposition that at least some crimes are relevant to credibility"). However, as we have previously indicated, the tribal court pleas were introduced for direct impeachment as statements inconsistent with Mr. Denetclaw's trial testimony, not as prior convictions under Rule 609(a). For this reason, Loper v. Beto, 405 U.S. 473 (1972), cited by Mr. Denetclaw, is inapposite. In Loper, a Supreme Court plurality held that the use of a constitutionally invalid conviction to impeach a defendant's general character and credibility deprives him of due process of law but expressly distinguished this situation:

> [Loper] is not a case where the record of a prior conviction was used for the purpose of directly rebutting a specific false statement made from the witness stand. The previous convictions were used, rather, simply in an effort to convict [the defendant] by blackening his character and thus damaging his general credibility in the eyes of the jury.

Id. at 482 n.11 (citations omitted). Unlike in Loper, the tribal court pleas in this case were used to directly rebut statements made from the witness stand.

## II. Sentence Enhancement

Mr. Denetclaw claims that the trial court erred in enhancing his sentence under the Sentencing Guidelines by two offense levels for obstruction of justice. We review the district court's findings of fact under the clearly erroneous standard and the application of the Sentencing Guidelines de novo. United States v. Pelliere, 57 F.3d 936, 940 (10th Cir. 1995).

The district court enhanced Mr. Denetclaw's sentence because it determined that he had committed perjury. Mr. Denetclaw claims that the district court failed to sufficiently identify the statement(s) that it found perjurious. See United States v. Massey, 48 F.3d 1560, 1573 (10th Cir.), cert. denied, 115 S. Ct. 2628 (1995). We disagree.

The Sentencing Guidelines allow the court to increase the defendant's offense level by two levels for obstruction of justice. U.S.S.G. § 3C1.1. Under United States v. Dunnigan, 507 U.S. 87 (1993), the district court should make "separate and clear finding[s]" regarding the alleged perjury. Id. at 95. "Following Dunnigan, we have continued to require that sentencing judges specifically identify or describe the perjurious testimony before applying the enhancement under § 3C1.1." Massey, 48 F.3d at 1573. "We recognize, however, highly specific findings may not be possible in every case."

United States v. Owens, 70 F.3d 1118, 1132 (10th Cir. 1995). As we explained in

Massey:

> The district court may generally identify the testimony at issue . . . and it is sufficient if such testimony is merely described in substance so that when we review the transcript we can evaluate the Dunnigan findings of the elements of perjury against an identified line of questions and answers without having simply to speculate on what the district court might have believed was the perjurious testimony.

Massey, 48 F.3d at 1574.

The district court in this case adequately identified the statements it believed were false by adopting the findings of the presentence report. See 4 R. at 362; accord United States v. Ballard, 16 F.3d 1110, 1113 (10th Cir.) (district court adopted findings from the presentence report), cert. denied, 114 S. Ct. 2762 (1994). The presentence report specifically identified Mr. Denetclaw's statements regarding his tribal pleas and his self-defense claim as perjurious, as well as his testimony that Mike Hernandez had a knife. 2 R. at ¶ 23, 29, 35 (Presentence Report). As was the case in Ballard, "[t]he sentencing judge's adoption of . . . the presentence report provided the Appellant and this court with a clear understanding of the information upon which the district court relied when it determined defendant's sentence." Ballard, 16 F.3d at 1113.

AFFIRMED.

**No. 95-2222, <u>United States v. Kennedy Denetclaw</u>**

**LUCERO**, Circuit Judge, concurring.

I concur with my colleagues as to the result, but write separately to note my concern regarding one aspect of the case. As the majority notes, on cross examination of the defendant, the government used the defendant's tribal court plea to the underlying misdemeanor offense[2] to impeach his testimony that he acted in self-defense. It is the use of the tribal court judgment -- which, though never offered into evidence, apparently contains an assertion that the defendant pleaded either guilty or no contest to a misdemeanor charge arising from the same set of facts -- that causes me concern.

Use of the misdemeanor plea by the government was proffered, not under Rule 609, but rather under Rule 613. At that time, the defendant made an objection under Rule 403. The record does not reveal whether the trial court gave express consideration to the prejudicial effect under Rule 403 to the use of the plea; however, I excerpt a portion of the record that indicates that the court may have been aware of the potential prejudice:

> THE COURT: I find the documents to be trustworthy under the self-authentication rule, and therefore you can ask questions about his plea in the tribal court.
>
> MS. NEDA: I understand, Your Honor.
>
> MR. JAMESON: Your Honor, if I could --

---

[2] In tribal court, Denetclaw was charged with aggravated assault, which is defined as "[u]nlawfully assault[ing] or strik[ing] at another with a deadly weapon." Navajo Nation Code tit. 17, § 315(A)(1). In federal court, one of the charges Denetclaw faced was for "[a]ssault with a dangerous weapon, with intent to do bodily harm, and without just cause or excuse." 18 U.S.C. § 113(a)(3), formerly 18 U.S.C. § 113(c).

THE COURT:  However, I'll point out to you that if I'm wrong, this will probably get me reversed, and sometimes prosecutors overkill in a case.

Tr. Trans. at 246.

Had defense counsel objected to the use of the tribal court judgment under Fed. R. Evid. 803(22), which excludes as hearsay, for certain purposes, any judgment of conviction of a misdemeanor, or any judgment entered after a plea of nolo contendere, the use of the judgment here likely would have been precluded in its entirety.  The advisory committee's notes to Rule 803(22) state: "Practical considerations require exclusion of convictions of minor offenses, not because the administration of justice in its lower echelons must be inferior, but because motivation to defend at this level is often minimal or nonexistent."  Id., advisory committee's notes.   Such an objection was not made below nor did counsel argue it on appeal.  Nevertheless, the commentary to Rule 803(22) cautions us as to the highly prejudicial nature of the use of a misdemeanor judgment in a case such as this.

A similar caution signal exists in Fed. R. Evid. 609.  While the heightened prejudice standard of Rule 609 is not imported into a Rule 403 analysis, nonetheless, the common law history of Rule 609 cautions us to take care that a defendant is not improperly prejudiced by admission of a judgment.  Rule 609 recognizes that in "virtually every case in which prior convictions are used to impeach the testifying defendant, the defendant faces a unique risk of prejudice -- *i.e.,* the danger that convictions that would be excluded under Fed. R. Evid. 404 will be misused by a jury as propensity evidence

- 2 -

despite their introduction solely for impeachment purposes." Fed. R. Evid. 609, advisory committee's notes. Here, the risk is even greater: that a jury will consider the evidence not as probative of credibility, but as proof of ultimate guilt. See United States v. Martinez, 555 F.2d 1273, 1276 (5th Cir. 1977) (court could "hardly conceive of a more prejudicial prior conviction" than one arising from same set of facts; introduction of conviction as impeachment evidence under Rule 609 deprived defendant of right to have jury determine whether elements of crime were proven beyond reasonable doubt).

It is difficult on the record before us to determine whether the trial court engaged in a proper weighing of probative value and prejudice under Rule 403. Had the defendant objected under Rule 803(22), or had the defendant properly raised and argued the Rule 403 issues on appeal, I might be persuaded that a reversal is warranted. Neither was done. I concur in the result.