### UNITED STATES of America, Plaintiff,

v.

### Michael R. MARTIN, William D. Ladd, Management Services of Illinois, Inc., and Ronald D. Lowder, Defendants.

#### No. 96–30036.

United States District Court,
C.D. Illinois,
Springfield Division.

Aug. 11, 1997.

Rodger A. Heaton, Patrick J. Chesley, Asst. U.S. Attys., Springfield, IL, for Plaintiff.

Ronald Menaker, Patrick A. Tuite, Arnstein & Lehr, Chicago, IL, J. Steven Beckett, Carol A. Dison, Brett N. Olmstead, Beckett & Associates, Urbana, IL, Daniel C. Lanterman, Gramlich Law Offices, Springfield, IL,

D. Peter Wise, Metnick, Wise, Cherry & Frazier, Springfield, IL, Ronald J. Stone, Bruce Stratton, Springfield, IL, for Defendants.

## *OPINION*

RICHARD MILLS, District Judge:

"Every criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury." *Harris v. New York,* 401 U.S. 222, 225, 91 S.Ct. 643, 645, 28 L.Ed.2d 1 (1971).

## I. BACKGROUND

In a previous Order, the Court stated that it would reserve ruling on the issue of whether the Government could use the tape recorded conversations between Defendant Michael R. Martin and Curtis Fleming for impeachment purposes until it had been determined that Defendant would testify on his own behalf. Defendant has now indicated that he will, in fact, testify on his own behalf. Furthermore, the Government has indicated that if Defendant's testimony differs from the statements which he made to Fleming, it intends to introduce the recorded conversations for impeachment purposes. Accordingly, this issue is now ripe for the Court's consideration.[1]

Defendant argues that the Government should not be allowed to use the tape recorded conversations for impeachment purposes because said statements were deliberately elicited by the Government in violation of his Sixth Amendment rights. Defendant asserts that the Government, by sending Fleming to secretly tape record conversations with him, violated his Sixth Amendment right to counsel. Moreover, Defendant claims that the statements which he made to Fleming were in no way voluntary and, therefore, cannot be used for impeachment purposes. Defendant asserts that without a waiver of the constitutional right to counsel which he had asserted, the use of the tape recorded conversations is impermissible. Accordingly, Defendant asks the Court to bar the use of the recorded statements as impeachment material.

The Government argues that the statements were recorded as a result of a legitimate investigation of Defendant's alleged attempts to obstruct justice in violation of 18 U.S.C. § 1503 and 1512. Although Defendant's statements could not be used in the Government's case-in-chief,[2] the Government asserts that the statements can be used for impeachment purposes. The Government claims that Defendant's statements were voluntarily made and that Defendant should not be able to hide behind the allegation that the Government illegally elicited his statements in order to testify untruthfully.[3] Accordingly, the Government asks the Court to deny Defendant Martin's motion.

## II. ANALYSIS

### A. *VOLUNTARINESS*

■ The key inquiry with respect to the admission of inculpatory statements for the limited purpose of impeachment is the question of whether the statements were voluntary and not coerced. *Oregon v. Hass,* 420 U.S. 714, 722, 95 S.Ct. 1215, 1220–21, 43 L.Ed.2d 570 (1975); *United States ex rel. Adkins v. Greer,* 791 F.2d 590, 596 n. 5 (7th Cir.1986) (holding that the key inquiry with respect to the admission of inculpatory statements as impeachment is the issue of voluntariness). Voluntary statements are admissible under some circumstances. *E.g., Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) (holding *Miranda* does not prohibit the use of a defendant's voluntary statements). However, involuntary statements are not admissible for

---

1. Defendant Ronald D. Lowder has joined Defendant Martin's motion to bar the use of recorded conversations for impeachment purposes. Curtis Fleming tape recorded one telephone conversation between himself and Lowder. Therefore, the Court's ruling applies to the Government's use of Defendant Lowder's tape recorded conversations for impeachment purposes as well.

2. *See Maine v. Moulton,* 474 U.S. 159, 173–74, 106 S.Ct. 477, 485–86, 88 L.Ed.2d 481 (1985); *Massiah v. United States,* 377 U.S. 201, 206, 84 S.Ct. 1199, 1203, 12 L.Ed.2d 246 (1964).

3. The Government denies Defendant's allegation that his Sixth Amendment right to counsel was violated.

any purpose. *New Jersey v. Portash*, 440 U.S. 450, 459, 99 S.Ct. 1292, 1297, 59 L.Ed.2d 501 (1979); *Mincey v. Arizona*, 437 U.S. 385, 398, 98 S.Ct. 2408, 2416–17, 57 L.Ed.2d 290 (1978).

■ "A confession will be found to be voluntary only if the government can demonstrate that, under the totality of the circumstances and by a preponderance of the evidence, it was not secured by the government through psychological or physical intimidation, but rather was the product of a rational intellect and free will." *United States v. D.F.*, 115 F.3d 413, 419 (7th Cir.1997); *United States v. Montgomery*, 14 F.3d 1189, 1194 (7th Cir.1994). Some sort of Governmental coercion is necessary in order to find that a confession is not voluntary. *Colorado v. Connelly*, 479 U.S. 157, 167, 107 S.Ct. 515, 521–22, 93 L.Ed.2d 473 (1986); *United States v. Haddon*, 927 F.2d 942, 946 (7th Cir.1991). Accordingly, there must be an "essential link between coercive activity of the State, on the one hand, and a resulting confession by a defendant, on the other." *Connelly*, 479 U.S. at 165, 107 S.Ct. at 521; *D.F.*, 115 F.3d at 419.

■ In the instant case, the Court finds that Defendant's statements were voluntary. Fleming recorded four separate telephone conversations with Defendant. Of those conversations, Defendant initiated three of them.[4] Furthermore, there is no evidence on the tape to indicate that Fleming, on behalf of the Government, coerced Defendant into making any statements. Defendant was not under duress, physical intimidation, or psychological intimidation by the Government when he made the statements at issue. Accordingly, the Court finds that under the totality of the circumstances, Defendant's statements were the product of his rational intellect and free will.

## B. *RIGHT TO COUNSEL*

However, the Court's inquiry does not end here. Defendant also argues that when Fleming tape recorded his conversations for

the Government, he "deliberately elicited" incriminating statements from him in violation of his Sixth Amendment right to counsel. *See Maine v. Moulton*, 474 U.S. 159, 173–74, 106 S.Ct. 477, 485–86, 88 L.Ed.2d 481 (1985); *United States v. Henry*, 447 U.S. 264, 270, 100 S.Ct. 2183, 2186–87, 65 L.Ed.2d 115 (1980); *Massiah v. United States*, 377 U.S. 201, 206, 84 S.Ct. 1199, 1203, 12 L.Ed.2d 246 (1964). Defendant asserts that even though the Government knew that his right to counsel had attached, the Government, through Fleming, initiated an interrogation without the presence of his counsel. Therefore, because the Government violated his "core constitutional right," Defendant states that the Government should be barred from using his statements for impeachment purposes.

■ The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. Amend. VI. The U.S. Supreme Court has stated that the essence of the right to counsel is the opportunity to consult with an attorney and to have an attorney prepare a defense for trial. *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). A defendant's attorney is to be a "medium" between him and the Government. *Moulton*, 474 U.S. at 176, 106 S.Ct. at 487. "For the fruits of postindictment interrogations to be admissible in a prosecution's case in chief, the State must prove a voluntary, knowing, and intelligent relinquishment of the Sixth Amendment right to counsel." *Michigan v. Harvey*, 494 U.S. 344, 349, 110 S.Ct. 1176, 1179, 108 L.Ed.2d 293 (1990); *Patterson v. Illinois*, 487 U.S. 285, 292, 108 S.Ct. 2389, 2394–95, 101 L.Ed.2d 261 (1988).

In *Michigan v. Jackson*, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986), the U.S. Supreme Court created a bright-line rule for deciding whether a criminal defendant who had asserted his Sixth Amendment right to counsel had subsequently waived that right. In *Jackson*, the Supreme Court opined that

4. As to the fourth call, the Court is unable to determine who called whom because Fleming did not begin taping the conversation until after the conversation had begun. Likewise, while Fleming initiated the telephone call to Defendant Lowder, he was simply returning a message previously left by Defendant Lowder.

"if police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid." *Id,* at 636, 106 S.Ct. at 1411. The Supreme Court reached its conclusion by superimposing the reasoning of *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), which had announced a "prophylactic rule" in the Fifth Amendment context, onto the Sixth Amendment. *Jackson,* 475 U.S. at 636, 106 S.Ct. at 1411. Accordingly, the Supreme Court held that any such waiver is presumed to be invalid and that the evidence obtained pursuant to such a waiver is inadmissible in the Government's case-in-chief. *Id.*

Four years later, the U.S. Supreme Court revisited this issue. In *Michigan v. Harvey,* 494 U.S. 344, 110 S.Ct. 1176, 108 L.Ed.2d 293 (1990), the Supreme Court held that a statement made to a police officer which was taken in violation of *Jackson* could be used to impeach a defendant's testimony. *Id.* at 351–52, 110 S.Ct. at 1180–81. The Supreme Court reached its conclusion by distinguishing between a violation of "prophylactic standards" and "constitutional violations."

*Jackson's* roots, the Supreme Court stated, are in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *Miranda* imposed prophylactic standards on the Government to safeguard the Fifth Amendment; it did not create new Constitutional rights. *Harvey,* 494 U.S. at 350, 110 S.Ct. at 1180; *Michigan v. Tucker,* 417 U.S. 433, 446, 94 S.Ct. 2357, 2364–65, 41 L.Ed.2d 182 (1974). Simply because the Government may have violated an accused's *Miranda* rights, it does not necessarily mean that the accused's Fifth Amendment rights have also been violated. *Harvey,* 494 U.S. at 350, 110 S.Ct. at 1180.

▮ Thus, while statements taken in violation of a prophylactic rule cannot be used in the Government's case-in-chief,[5] the Government may use the statements for impeachment purposes. *Id.* at 351–52, 110 S.Ct. at 1180–81. The Supreme Court reasoned that while the Government should not be allowed to support its case based upon evidence acquired in contravention of Constitutional guarantees and corresponding judicially created protections,

> [i]f a defendant exercises his right to testify on his own behalf, he assumes a reciprocal "obligation to speak truthfully and accurately," we have consistently rejected arguments that would allow a defendant to "'turn the illegal method by which evidence in the Government's possession was obtained to his own advantage, and provide himself with a shield against contradiction of his untruths.'"

*Id.* at 351, 110 S.Ct. at 1180 (citations omitted). Accordingly, for a *Jackson* prophylactic violation, the Government may use a defendant's statement against him for impeachment purposes.[6] *Id.* at 352, 110 S.Ct. at 1181.

In the case at bar, Defendant argues that his was not a prophylactic violation but was a core constitutional right violation. Therefore, his statements are not available for impeachment purposes.

▮ The Court disagrees. Nothing in the Sixth Amendment prevents an accused from voluntarily speaking with the police outside the presence of his attorney. *Id.* Although "a criminal defendant will not ordinarily be held to have assumed the risk that those to whom he speaks (after the right to counsel has attached) are state agents, even when those to whom he speaks are his codefendants," *Jenkins v. Leonardo,* 991 F.2d 1033, 1037 (2nd Cir.1993),[7] Defendant was advised and knew that any statement he

---

5. *See Harris,* 401 U.S. at 224–25, 91 S.Ct. at 645; *see also Hass,* 420 U.S. at 721–22, 95 S.Ct. at 1220–21.

6. "We have never prevented use by the prosecution of relevant voluntary statements by a defendant, particularly when the violations alleged by a defendant relate only to procedural safeguards that are 'not themselves rights protected by the Constitution,' ... but are instead measures designed to ensure that constitutional rights are protected." *Id.,* quoting *Tucker,* 417 U.S. at 444, 94 S.Ct. at 2363–64.

7. *See Massiah,* 377 U.S. at 202, 84 S.Ct. at 1200–01; *see also Moulton,* 474 U.S. at 176–77, 106 S.Ct. at 487–88.

made could and probably would be used against him. Moreover, the Government did not deny Defendant the right to counsel, rather it initiated a interrogation of Defendant after he had invoked his right to counsel, *i.e.* a *Jackson* prophylactic violation.

## C. *WAIVER OF RIGHT TO COUNSEL*

■ The next step for the Court to take is to determine whether Defendant made a knowing, voluntary, and intelligent waiver of his prior asserted right to counsel. "For the fruits of postindictment interrogations to be admissible in a prosecution's case in chief, the State must prove a voluntary, knowing, and intelligent relinquishment of the Sixth Amendment right to counsel." *Harvey*, 494 U.S. at 348, 110 S.Ct. at 1179; *Patterson*, 487 U.S. at 292, 108 S.Ct. at 2394–95; *Brewer v. Williams*, 430 U.S. 387, 404, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424 (1977). The Government bears the burden of showing that a waiver is voluntary, knowing, and intelligent. *Id.*

Here, the Government has offered no showing that Defendant waived his prior asserted right to counsel. Indeed, it would be difficult for the Government to make such a showing because Defendant was unaware that Fleming was working for the Government when the two spoke.

■ Accordingly, the Court must decide the issue which the Supreme Court in *Harvey* specifically left open: whether a defendant's voluntary statement obtained in the absence of a knowing and voluntary waiver of the right to counsel is admissible for impeachment purposes? *Harvey*, 494 U.S. at 354, 110 S.Ct. at 1182. The authority available on this issue is admittedly sparse. However, the Court is persuaded by the cases which are available that a defendant's voluntary statement obtained in the absence of a knowing and voluntary waiver is admissible for impeachment purposes.

Initially, the Court notes that it rejects the holding of *United States v. Spencer*, 955 F.2d 814 (2nd Cir.1992). In answering the ques-

tion left open by the Supreme Court, the United States Court of Appeals for the Second Circuit stated:

> our choice is to require a knowing and voluntary waiver of the right to counsel, even where the statement given is shown to be voluntary. We conclude that, in the absence of a later waiver of the initially invoked right to counsel, any subsequent statement transgresses the core constitutional right to counsel, rather than a judicially created prophylactic rule for the protection of that right, and therefore should not be available to the prosecution for any purpose.

*Id.* at 820. Accordingly, the Second Circuit remanded the case for a determination by the district court as to whether the defendant had made a knowing and voluntary waiver of his right to counsel.[8]

However, in this Court's opinion, the Second Circuit gave too little weight to the concerns expressed by both the U.S. Supreme Court and other Courts of Appeals that by deeming such statements inadmissible for impeachment purposes, the exclusion potentially provides a defendant with a shield against contradiction of his untruths and diminishes the Court's "search for truth in a criminal case." *See Harris*, 401 U.S. at 225, 91 S.Ct. at 645; *Hass*, 420 U.S. at 722–23, 95 S.Ct. at 1221. For example, the Fifth Circuit has stated in dicta that "[i]t is well established that the prosecution may use a statement obtained in violation of the Sixth Amendment to impeach a defendant's false or inconsistent testimony." *United States v. Laury*, 49 F.3d 145, 150 (5th Cir.1995) (footnote omitted).

In addition, the Tenth Circuit has on at least two occasions allowed the use—for impeachment purposes—of a defendant's statement obtained in violation of the defendant's Sixth Amendment right to counsel. In *United States v. McManaman*, 606 F.2d 919 (10th Cir.1979), the defendant made incriminating statements to a Government informant who was wearing an electronic transmitter. *Id.* at 923. The Government recorded the con-

---

8. On remand, the district court determined that the defendant knowingly and voluntarily waived his prior asserted right to counsel, and the Sec-
ond Circuit affirmed the district court's ruling. *United States v. Spencer*, 995 F.2d 10 (1993).

versation as it received it from the transmitter. *Id.* During this conversation, the defendant made reference to some drug dealings. *Id.*

The Tenth Circuit affirmed the district court's decision allowing the prosecution to impeach the defendant with these prior statements where the defendant, while testifying on direct examination, made a "sweeping" denial of any drug dealings. *Id.* at 924. The Court of Appeals stated that "the defendant here was not free to make such a sweeping denial of drug dealings by possibly perjurious testimony, in reliance on the Government's inability to challenge his credibility because its rebuttal evidence was illegally secured." *Id.* at 925, *citing Walder v. United States,* 347 U.S. 62, 65, 74 S.Ct. 354, 356, 98 L.Ed. 503 (1954).

Likewise, in *United States v. Denetclaw,* 96 F.3d 454 (10th Cir.1996), the Tenth Circuit affirmed the trial court's allowance of the Government's use, for impeachment purposes, of the defendant's statements which he had made without the assistance of counsel. In *Denetclaw,* the defendant pleaded guilty in a Navajo Nation tribal court to the tribal misdemeanor offense of aggravated battery. *Id.* at 456. Denetclaw was later indicted by a federal grand jury for crimes arising from the same acts for which he pleaded guilty at the tribal court. *Id.* The district court allowed the Government to impeach the defendant with the tribal court pleas. *Id.* at 457.

In affirming the district court's ruling, the Tenth Circuit focused upon the fact that the defendant's testimony differed from his earlier pleas, rather than on the truthfulness of his tribal court pleas. *Id.* at 457. Accordingly, the Tenth Circuit concluded:

> The fact that Mr. Denetclaw may not have had full constitutional protections at his tribal hearing, nor understood the consequences of his statements, does not alter the fact that he made such statements at that hearing. The fact remains that Mr. Denetclaw's pleas at the hearing were in-

consistent with his story at trial, and the district court properly allowed the prosecution to explore this during its cross-examination of Mr. Denetclaw. Mr. Denetclaw's tribal pleas were only allowed for the limited purpose of impeachment, not as substantive evidence, and thus we focus not on the truthfulness of his pleas but rather on the fact that his pleas differ from his later testimony. The pleas are no different from any other inconsistent statements made by Mr. Denetclaw to a third person which could be used to impeach him.

*Id.,* citing *Harris,* 401 U.S. at 225–26, 91 S.Ct. at 645–46; *see United States v. Rowley,* 975 F.2d 1357, 1362 (8th Cir.1992) (holding that the only two things which would render a defendant's statement inadmissible for impeachment purposes is if the statement is involuntary or if the statement, even if voluntary, "does not sufficiently promote the court's truth-seeking function and it is not just a 'speculative possibility' that such use would encourage police misconduct.").

Finally, the Court is guided by the Seventh Circuit's concern for providing a defendant with the opportunity to commit perjury with impunity. While the case is somewhat distinguishable from the case at bar,[9] *United States v. Lott,* 854 F.2d 244 (7th Cir.1988), provides useful guidance regarding the Seventh Circuit's position on the issue before the Court. In *Lott,* the district court allowed the Government to impeach the defendant with statements he had made at a preliminary hearing. *Id.* at 246–47. The Government conceded that, at the hearing, the defendant did not have effective assistance of counsel. *Id.* However, the Government argued that the defendant's statements could nonetheless be used for impeachment purposes at trial.

The Seventh Circuit agreed. In affirming the district court, the Seventh Circuit showed its concern with presenting a defendant with the opportunity to commit perjury:

> Lott had a choice at the preliminary hearing; better yet: choices. Lott could have chosen not to testify, to testify truthfully,

9. In *Lott,* there was no claim that the Government elicited the defendant's prior statements through any coercion or misconduct. Here, Defendant claims that the Government deliberately

elicited his statements in violation of his Sixth Amendment right to counsel. *See Moulton,* 474 U.S. at 176–77, 106 S.Ct. at 487–88; *see also Massiah,* 377 U.S. at 206, 84 S.Ct. at 1203.

or to commit perjury. Later, he faced the same three alternatives at his trial, where his testimony indicated that he chose the last of the three in at least one of the two proceedings. In short, Lott voluntarily created the predicament he now asks us to get him out of. We refuse to do so; the underlying message of both *Portash* and *Brown*—that a criminal defendant cannot be compelled or coerced into contributing to his or her own conviction—is not applicable to this case. On the other hand, the antiperjury considerations that generated the *Harris* line of considerations are applicable. We therefore hold that Lott's preliminary hearing testimony was admissible for impeachment purposes at his trial. To hold otherwise would pervert Lott's Sixth Amendment right to counsel into a right to commit perjury.

*Id.* at 249.

 Likewise, in the instant case, Defendant has choices to make. Defendant voluntarily chose to make the statements at issue to Fleming. To bar the use of Defendant's statements, in the Court's opinion, would diminish the Court's truth-seeking purpose in a criminal trial and would give too little weight to antiperjury considerations.

### III. CONCLUSION

Accordingly, the Court finds, as the Seventh Circuit found in *Lott,* that "[t]o hold otherwise would pervert [the] Sixth Amendment right to counsel into a right to commit perjury." *Id.*

However, this does not give the Government *carte blanche* to use the recorded conversations to impugn the character of Defendant if he decides to testify on his own behalf. Prior to using the recorded conversations for impeachment purposes, the Government must establish how the Defendant's testimony on direct examination opened the door for impeachment *via* the recorded statements and what statements from the recorded conversation it intends to use for impeachment purposes. By this means, Defendant's rights should be properly balanced against antiperjury considerations.

*Ergo,* Defendant Michael R. Martin's Motion to Bar Government's Use of Improperly Recorded Conversations for Impeachment Purposes is DENIED.